IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CIARA SHEEHAN, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EVERSTORY PARTNERS, ET AL. | : | NO. 24-6581 |

**<u>MEMORANDUM</u>**

**Padova, J.**                                                        **September 17, 2025**

Plaintiffs Ciara Sheehan, Justine Heydorn, Lisa Polascak, Tara Iannacone, and Lorraine Hernandez, former employees of Defendant Everstory Partners ("Everstory"), have brought this action against Everstory and Matthew Sobon, their former supervisor, asserting federal and state law claims of sex discrimination, sexual harassment, and retaliation, as well as a state law claim of wrongful discharge and a claim under Pennsylvania's Wage Payment and Collection Law. Defendants have filed a Motion to Compel Arbitration, seeking to compel Sheehan, Heydorn, Polascak, and Iannacone (the "Motion Plaintiffs") to arbitrate their claims pursuant to Arbitration Agreements they entered into with Everstory. We deny the Motion for the reasons set forth below.

## I.    FACTUAL BACKGROUND

The First Amended Complaint alleges the following facts. Everstory owns funeral homes and cemeteries, including Kirk & Nice Suburban Chapel and Sunset Memorial Park in Huntingdon Valley, Pennsylvania, where all of the Plaintiffs worked. (Am. Compl. ¶¶ 6, 32.) Sobon is an employee of Everstory and was Plaintiffs' supervisor. (<u>Id.</u> ¶ 10.) Plaintiffs began working for Everstory at different times, with Hernandez starting in August 2015, Polascak starting in December 2019, Sheehan starting in August 2021, Iannacone starting in November 2021, and Heydorn starting in June 2022. (<u>Id.</u> ¶¶ 26-30.)

Plaintiffs heard Sabon and Funeral Director and General Manager Joe Lebisky make sexual remarks while they were employed by Everstory.  In one instance, some of the Plaintiffs heard Sabon and Lebisky refer to an unidentified female employee of Everstory as a "cunt" and a "useless bitch."  (<u>Id.</u> ¶ 34.)  The other Plaintiffs were aware of these comments.  (<u>Id.</u> ¶ 35.)  In addition, Lebisky frequently commented in front of Plaintiffs that the building in which Plaintiffs worked was "nothing but a fucking sorority."  (<u>Id.</u> ¶ 38.)  He also made sexual comments to Plaintiffs Hernandez and Heydorn.  Specifically, Lebisky frequently made comments to Hernandez such as "your tits look great," which the other Plaintiffs witnessed.  (<u>Id.</u> ¶¶ 39-40.)  Lebisky also repeatedly stated that Heydorn "could crush his head with her thighs."  (<u>Id.</u> ¶ 41.)  Plaintiffs all heard Lebisky make these comments to Heydorn.  (<u>Id.</u> ¶ 42.)

Lebisky also engaged in performative sexual harassment directed towards Heydorn and two other female employees of Everstory.  On one occasion in July 2022, "Lebisky placed a pair of men's underpants in a high-traffic, common area . . . with a note to Plaintiff Heydorn stating that he could not wait to see her" (the "underpants incident").  (<u>Id.</u> ¶ 50.)  All of the Plaintiffs saw Lebisky's underpants and note.  (<u>Id.</u> ¶ 51.)  In May 2021, Lebisky "drew devil horns and a mustache" on a picture of an unidentified female employee and wrote "Fatal Attraction" on the picture to indicate that the female employee was sexually obsessed with him (the "Fatal Attraction picture").  (<u>Id.</u> ¶ 44.)  Polascak and Hernandez both saw this picture.  (<u>Id.</u> ¶ 46.)  In March 2022, Lebisky wrote the name of an unidentified female employee, whom he perceived to be overweight, and the words "Lift 5000" on a lift in a common area (the "Lift 5000 incident").  (<u>Id.</u> ¶¶ 47-48.)  Sheehan, Iannacone, Polascak, and Hernandez saw the message on the lift.  (<u>Id.</u> ¶ 49.)  In addition, an unnamed manager called Polascak "ugly" in March 2020.  (<u>Id.</u> ¶ 43.)

In 2022 and 2023, the Motion Plaintiffs complained about Defendants' violation of rules promulgated by the State Board of Funeral Directors, which Defendants had ordered Plaintiffs to violate. (Id. ¶¶ 52-53.) In one instance, Polascak refused Sobon's request that she illegally cremate a body without any paperwork, an incident that Sheehan reported to Everstory. (Id. ¶¶ 54, 58.) Sobon also asked "Polascak to violate the law by hiding the fact that a direct cremation package was sold by the cemetery to a family." (Id. ¶ 56.) When Polascak refused, Sobon screamed at her and threatened to fire her. (Id. ¶¶ 55, 57.) Iannacone reported to Everstory that Sobon pressured her and other Plaintiffs to perform illegal disinterments without the proper paperwork, which Plaintiffs refused to do. (Id. ¶¶ 59-60.) In yet another incident, Everstory "pressured . . . Heydorn to illegally identify a body that had been placed in the wrong crypt without authorization," but Heydorn refused to violate the law. (Id. ¶¶ 61-62.)

On February 13, 2023, Polascak made a complaint of sex discrimination to Everstory's Human Resources Department. (Id. ¶ 63.) Plaintiffs Sheehan, Heydorn, Iannacone, and Hernandez all participated in the investigation of Polascak's complaint. (Id. ¶ 64.) Later that month, Sheehan, Heydorn, and Iannacone complained to their General Manager, Donald Underwood, that Sobon was discriminating against them on the basis of their sex. (Id. ¶¶ 65-66.) They asked Underwood to help them make a report to HR. (Id. ¶ 67.) Polascak attended the meeting with Underwood and also asked for his help in connection with her own complaint of sex discrimination. (Id. ¶ 68.) Instead of helping Plaintiffs, Underwood, in violation of company policy, told Sobon about their complaints of sex discrimination. (Id. ¶ 69.)

The weekend after Sobon learned about Polasack's sex discrimination complaint, he "continually called her and left multiple voicemail messages in an effort to intimidate her into withdrawing her complaint of discrimination." (Id. ¶ 71.) In addition, Everstory made escalating

threats to terminate Polascak if she refused to violate the law.  (Id. ¶ 72.)  Polascak was concerned

that she would lose her licensure if Everstory fired her, so she resigned her job on February 24,

2023.  (Id. ¶¶ 73-74.)  Everstory failed to pay Polascak her final paycheck.  (Id. ¶ 75.)

On March 20, 2023, about a month after they complained about sex discrimination,

Sheehan, Heydorn, and Iannacone were suspended for violating Everstory's "policy by accepting

and/or authorizing payment for performing pallbearing services" even though Everstory was aware

that none of them had violated this policy.  (Id. ¶¶ 77-78.)  Everstory terminated Sheehan, Heydorn,

and Iannacone on March 27, 2023.  (Id. ¶ 79.)  Sobon and Lebisky participated in Everstory's

decision to terminate them.  (Id. ¶ 80.)  A male employee who allegedly engaged in the same

conduct was not disciplined or terminated.  (Id. ¶ 81.)

On May 7, 2023, Hernandez made a complaint of sex discrimination to Lebisky.  (Id. ¶¶

82-83.)  On May 15, 2023, Hernandez was terminated due, at least in part, to the language she

used in making her complaint.  (Id. ¶ 84.)  Plaintiffs were all replaced by male employees.  (Id. ¶

85.)

The Amended Complaint asserts eight claims for relief.  Count I is a claim brought by all

Plaintiffs against Everstory for retaliation in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e et seq. ("Title VII").  Count II is a claim brought by all Plaintiffs against

Everstory and Sobon for retaliation in violation of the Pennsylvania Human Relations Act

("PHRA"), 43 Pa. Stat. Ann. § 951 et seq.  Count III is a claim brought by all Plaintiffs against

Everstory for disparate treatment sex discrimination in violation of Title VII.  Count IV is a claim

brought by all Plaintiffs against Everstory and Sobon for disparate treatment sex discrimination in

violation of the PRHA.  Count V is a claim brought by all Plaintiffs against Everstory for hostile

work environment in violation of Title VII.  Count VI is a claim brought by all Plaintiffs against

Everstory and Sobon for hostile work environment in violation of the PHRA. Count VII is a claim brought by the Motion Plaintiffs against Everstory for wrongful discharge in violation of Pennsylvania common law. Count VIII is a claim brought by Polascak against Everstory for failure to pay her all wages that it owed her in violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. § 260.1. et seq.

In the instant Motion, Defendants ask us to require the Motion Plaintiffs to individually arbitrate all of their claims pursuant to Arbitration Agreements that they signed electronically when they commenced their employment with Everstory. (See Sheean Decl. (Motion Ex. A) ¶¶ 3-6.) The Arbitration Agreements all contain the following language:

> 1.      The Parties agree to resolve any and all claims, disputes or controversies arising out of or relating in any way to . . . (b) Employee's employment and/or cessation of employment with Employer . . . through final and binding arbitration pursuant to the Federal Arbitration Act ("FAA"). . . .

> 2.      Employment-related claims, disputes or controversies by way of example only include: claims under federal, state and/or local statutes regarding the payment of wages, overtime, [or] severance pay, . . ; claims of discrimination and/or harassment based on age, sex, pregnancy, disability, handicap, . . . or any other factor protected by federal, state or local statutes prohibiting employment discrimination, including any claims for retaliation under these or any other laws; and all other claims arising out of or relating to Employee's . . . employment and/or cessation of employment under federal, state and/or local statutes, ordinances, constitutions and/or common law including, but not limited to, claims for retaliation and/or whistleblower claims, claims for wrongful discharge or discharge in violation of public policy, misrepresentation, [or] breach of contract . . . .

(Sheean Decl. Exs. 1-4 ¶¶ 1-2.) The Arbitration Agreements also provide that all claims subject to the Agreements "must be pursued individually . . . [and] arbitrated without consolidation of such claim with any other person's or entity's claim." (Id. ¶ 7.)

## II.    LEGAL STANDARD

Motions to compel arbitration are evaluated under one of "two possible standards." Young v. Experian Info. Sols., Inc., 119 F.4th 314, 317 (3d Cir. 2024). We apply Federal Rule of Civil

Procedure 12(b)(6)'s motion to dismiss standard "when 'the existence of a valid agreement to arbitrate between the parties is apparent from the face of the complaint.'"  Id. at 317-18 (quoting Singh v. Uber Techs. Inc., 939 F.3d 210, 216 (3d Cir. 2019)).  We apply the Rule 56 summary judgment standard when the "complaint does not set forth clearly that the claims are subject to an arbitration agreement, or if the plaintiff rebuts the motion to compel 'with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement.'" Id. at 319 (alteration in original) (quoting Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 774 (3d Cir. 2013)).  When "[a]pplying [the Rule 56] standard to a motion to compel arbitration, a 'district court should only grant [the] motion . . . if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law.'"  Id. at 317 n.4 (third and fourth alterations in original) (quoting Jaludi v. Citigroup, 933 F.3d 246, 251 n.7 (3d Cir. 2019)).

The Amended Complaint does not mention the existence of the Arbitration Agreements. Rather, Defendants rely on the Declaration of Karen Sheean, the Chief People Officer and Custodian of Records for Everstory to establish the existence and validity of the Agreements.  (See Sheean Decl. (Mot. Ex. A).)  Sheean has attached to her Declaration copies of the Arbitration Agreements that Defendants contend were executed by the Motion Plaintiffs.  (Id. Exs. 1-4.)  Since the agreements to arbitrate are not apparent on the face of the Amended Complaint, we apply the Rule 56 standard.  Young, 119 F.4th at 317-18.  Ordinarily, "'if the complaint and its supporting documents are unclear regarding the agreement to arbitrate . . . then the parties should be entitled to discovery on the question of arbitrability before' the motion to compel arbitration proceeds to decision."  Id. at 319 (quoting Guidotti, 716 F.3d at 776).  However, discovery is not necessary here because Plaintiffs do not presently dispute the existence of the Arbitration Agreements or their

execution of those Agreements.  Rather, they argue only that the Arbitration Agreements are not valid or enforceable in this case pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. § 401 et seq.  See Young, 119 F.4th at 319-20 ("In the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel.").

## III.   DISCUSSION

### A.   Validity and Scope of the Arbitration Agreements

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of [a written provision in a contract to arbitrate a controversy] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."  9 U.S.C. § 2.  "'It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration.'"  Eichlin v. GHK Co., 746 F. Supp. 3d 247, 251 (E.D. Pa. 2024)  (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009)).  "[B]efore compelling arbitration, a court will typically determine that '(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement.'"  Young, 119 F.4th at 318 (quoting Kirleis, 560 F.3d at 160) (citation omitted).

Here, Defendants argue, and Plaintiffs do not contest, that valid arbitration agreements exist and that the employment disputes at issue in this case all fall within the scope of those agreements.  Indeed, Defendants have submitted authenticated copies of the Arbitration Agreements that were electronically signed by Sheehan on August 6, 2021 (Sheean Decl. Ex. 1); by Heydorn on July 6, 2022 (id. Ex. 2); by Polascak on December 13, 2019 (id. Ex. 3); and by Iannacone on November 2, 2021 (id. Ex. 4).

"Under Pennsylvania law, contract formation requires: (1) mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." Kirleis, 560 F.3d at 160 (citing Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002)). An electronic signature is sufficient to indicate intent to be bound by an arbitration agreement. See Jackson v. Zep Mfg., Civ. A. No. 23-2622, 2024 WL 1175713, at *5 (E.D. Pa. Mar. 19, 2024) (citing Dicent v. Kaplan Univ., 758 F. App'x 311, 313 (3d Cir. 2019).

The Arbitration Agreements clearly require arbitration of "any and all claims, disputes or controversies arising out of or in any way related to . . . Employee's employment and/or cessation of employment with Employer." (Sheean Decl. Exs. A-D at ¶ 1.) Moreover, they specify that such claims include statutory claims regarding the payment of wages and for "discrimination and/or harassment based on . . . sex" as well as claims for retaliation and wrongful discharge. (Id. ¶ 2.) The Agreements further identify the arbitration rules that the parties must follow, as well as the manner in which arbitration should be initiated, and how arbitration costs should be allocated. (Id. ¶¶ 1, 3.) Finally, the Agreements are properly supported by consideration because Plaintiffs were employed in exchange for signing them. See McMasters v. Rest. Brands Int'l, Inc., Civ. A. No. 20-791, 2021 WL 11728156, at *6 (W.D. Pa. Aug. 25, 2021) (noting district court holdings that "'continued employment fulfills the consideration requirement under Pennsylvania law.'" (quoting Morina v. Neiman Marcus Grp., Inc., Civ. A. No. 14-1394, 2014 WL 4933022, at *10 n.6 (E.D. Pa. Sept. 30, 2014)) (citing Smeck v. Comcast Cable Commc'ns. Mgmt., Civ. A. No. 19-3625, 2020 WL 6940011, at *5 (E.D. Pa. November 25, 2020))).

We therefore find, based on the undisputed record facts, that the parties intended to be bound by the Arbitration Agreements, that the terms of the Agreements were sufficiently definite to be enforced and include the Motion Plaintiffs' claims within their scope, and that the Agreements

are supported by consideration.  See Kirleis, 560 F.3d at 160.  Indeed, Plaintiffs have not come forward with any evidence that might demonstrate a genuine dispute as to any material fact regarding the validity or scope of the Arbitration Agreements.  Young, 119 F.4th at 317 n.4 (quoting Jaludi, 933 F.3d at 251 n.7)).  We thus conclude that the Arbitration Agreements are valid and enforceable, and that Plaintiffs' claims fall within their scope.

      B.     The EFAA

Notwithstanding the Arbitration Agreements' general validity and enforceability, Plaintiffs argue that the Agreements are not enforceable in the context of this litigation because their hostile work environment claims fall within the purview of the EFAA.[1]  The EFAA, which was enacted on March 3, 2022, "'is codified directly into the FAA and limits the scope of [the FAA's] broad mandate to enforce arbitration agreements.'"  Cornelius v. CVS Pharmacy Inc., 133 F.4th 240, 245 (3d Cir. 2025) (quoting Olivieri v. Stifel, Nicolaus & Co., 112 F.4th 74, 84 (2d Cir. 2024)).  "'[T]he EFAA renders arbitration agreements invalid and unenforceable, at the election of the complainant, in sexual assault and sexual harassment cases.'"  Id. (alteration in original) (quoting Olivieri, 112 F.4th at 77).  The EFAA provides as follows:

> [n]otwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

---

[1] Plaintiffs also assert that their retaliation claims fall within the purview of the EFAA. However, as we explain in Section III.C., infra, if we find that the EFAA applies to any of Plaintiffs claims, the Arbitration Agreements that they signed are unenforceable as to the entire Amended Complaint.  In this Memorandum, we ultimately conclude that the EFAA applies to Plaintiffs' hostile work environment claims.  Consequently. we need not address whether Plaintiff's retaliation claims fall within the ambit of the EFAA.

9 U.S.C. § 402(a).  The EFAA defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  Id. § 401(4).

"Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 845 (3d Cir. 2016) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  "This type of sexual harassment claim is referred to as a hostile work environment claim."  Id. (citing Harris, 510 U.S. at 18-19).  The PHRA similarly prohibits "sexual harassment that is severe or pervasive enough to create a hostile work environment."  Phila. Hous. Auth. v. Am. Fed'n of State, County & Mun. Emps., 956 A.2d 477, 484 (Pa. Commw. Ct. 2008) (citing 43 Pa. Stat. Ann. § 955(a)).

While the Amended Complaint asserts hostile work environment claims based on sexual harassment pursuant to both Title VII and the PHRA, Defendants argue that Plaintiffs may not avoid arbitration of those claims in this case because the Amended Complaint does not plausibly allege those claims.  Defendants maintain that the EFAA precludes enforcement of arbitration agreements related to sexual harassment disputes only when the sexual harassment claim would survive a motion to dismiss.  Defendant relies on Michael v. Bravo Brio Restaurants LLC, Civ. A. No. 23-3691, 2024 WL 2923591 (D.N.J. June 10, 2024), which states the following:

> The EFAA does not adopt a specific standard a plaintiff must meet to allege a "sexual harassment dispute" to trigger the EFAA's provisions. Thus, the Court determines whether a plaintiff has "alleg[ed] conduct constituting a sexual harassment dispute," by applying the familiar Rule 12(b)(6) standard to evaluate whether a plaintiff has sufficiently plead a claim under the law allegedly violated.

Id. at *4 (quoting 9 U.S.C. § 402(a)) (citation omitted).  See also Mitchell v. Raymond James & Assocs., Inc., Civ. A. No. 23-2341, 2024 WL 4263151, at *2 (M.D. Fla. Sept. 23, 2024) (noting

that the EFAA contains a plausibility requirement (citing <u>Yost v. Everyrealm, Inc.</u>, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023)); <u>Doe v. Saber Healthcare Grp.</u>, Civ. A. No. 23-1608, 2024 WL 2749156, at *3 (M.D. Pa. May 29, 2024) ("To qualify as a 'sexual assault dispute' or 'sexual harassment dispute' under the EFAA, a plaintiff's claim must be sufficiently pled to survive a motion to dismiss under Rule 12(b)(6)." (citing <u>Mitura v. Finco Servs., Inc.</u>, 712 F. Supp. 3d 442, 451-52 (S.D.N.Y. 2024))). "Requiring sexual assault and sexual harassment claims to be capable of surviving a Rule 12(b)(6) motion 'vindicates the statute's purpose of providing sexual harassment claimants with a judicial forum while also respecting the FAA's well-established mandate that favors arbitration.'" <u>Id.</u> *3 (quoting <u>Mitura</u>, 712 F. Supp. 3d at 452). Plaintiffs do not dispute the applicability of the Rule 12(b)(6) standard to our determination of whether the EFAA applies to their hostile work environment claims. Accordingly, we apply that standard to determine whether the EFAA applies to the Motion Plaintiffs' hostile work environment claims in Counts V and VI of the Amended Complaint.

1.    <u>12(b)(6) Standard</u>[2]

When we apply Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." <u>Alpizar-Fallas v. Favero</u>, 908 F.3d 910, 914 (3d Cir. 2018) (quoting <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010)). "A complaint is properly dismissed for failing to state a claim 'if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility.'" <u>Talley v. Pillai</u>, 116 F.4th 200, 206 (3d Cir. 2024)

---

[2] Defendants have also filed a Motion to Dismiss the Amended Complaint. (<u>See</u> Docket No. 15.) In our analysis of the instant Motion, we have also considered the arguments the parties made regarding Plaintiffs' hostile work environment claims in their brief on the Motion to Dismiss.

(alteration in original) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).

"[W]e need not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc.

v. MarketPlace, PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S.

265, 286 (1986)) (citation omitted).  The complaint must allege "'sufficient factual matter to show

that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that

the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at

84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).   "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing  Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 556 (2007)).   A complaint fails to allege a facially plausible

claim if the factual allegations in the complaint are not sufficient "to raise a right to relief above

the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir.

2020) (quoting Twombly, 550 U.S. at 555).   Accordingly, in order to determine whether the

Motion Plaintiffs may rely on the EFAA in this case, we must determine whether the Amended

Complaint states facially plausible claims of hostile work environment based on sexual harassment

in violation of Title VII and the PHRA.

### 2.    Hostile Work Environment Standard

We analyze Plaintiffs' claims under Title VII and the PHRA under the same standard.  See

Faush v. Tuesday Morning, Inc., 808 F.3d 208, 213 (3d Cir. 2015) ("Claims brought under the

Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 et seq., are generally 'interpreted

coextensively with Title VII claims.'" (quoting Brown v. J. Kaz, Inc., 581 F.3d 175, 179 n.1 (3d

Cir. 2009)).  A facially plausible hostile work environment claim must allege the following:  "'1)

the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was

severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) [with regard to a claim brought against an employer] the existence of respondeat superior liability.'" Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (quoting Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013)) (citation omitted).

### 3.    Plaintiffs' Hostile Work Environment Claims

#### a.    Intentional Discrimination on the Basis of Sex

Defendants argue that the Amended Complaint fails to allege sufficient facts to support an inference that all of the Motion Plaintiffs suffered intentional discrimination based on sex.  The Amended Complaint claims that Sobon and Lebisky discriminated against Plaintiffs and other female Everstory employees by sexually harassing them.  As we described above, the Amended Complaint alleges that some of the Plaintiffs heard Sobon and Lebisky "refer to a female employee as a 'cunt' and a 'useless bitch'" and that all of the Plaintiffs were aware of these remarks.  (Am. Compl. ¶¶ 34-35.)  Plaintiffs also witnessed Lebisky making frequent comments that the building in which they worked was "'nothing but a fucking sorority.'"  (Id. ¶ 38.)  Lebisky frequently made sexual comments to Hernandez in front of the other Plaintiffs, such as "'your tits look great.'"  (Id. ¶¶ 39-40.)  Lebisky frequently said, in front of Plaintiffs, that Heydorn "could crush his head with her thighs."  (Id. ¶¶ 41-42.)  Lebisky is also alleged to have engaged in more performative sexual harassment, such as the underpants incident, the Fatal Attraction picture, and the Lift 5000 incident.  (See id. ¶¶ 44, 47-50.)  The Amended Complaint also alleges that "[a]ll Plaintiffs were adversely affected by the aforementioned hostile work environment on the basis of sex."  (Id. ¶¶ 110, 114.)  Thus, the Amended Complaint specifically alleges that Lebisky subjected Heydorn to sexually harassing comments and actions and also alleges that the remaining Motion Plaintiffs

were present when Lebisky made comments denigrating all of the employees in their building on the basis of their sex, when Lebisky made other comments sexually harassing other female employees of Everstory, and that some of them heard Sobon and Lebisky making denigrating remarks about yet another female Everstory employee on the basis of her sex. Viewing the allegations of the Amended Complaint in the light most favorable to the Motion Plaintiffs, we conclude that the Amended Complaint plausibly alleges that each of the Motion Plaintiffs was subjected to sexual harassment and that the Amended Complaint plausibly alleges the first element of a hostile work environment claim on behalf of all of the Motion Plaintiffs.

b.    The Severity or Pervasiveness of the Sexual Harassment

Defendants also argue that the Amended Complaint fails to plausibly allege that Plaintiffs suffered sexual harassment that was severe or pervasive. The Supreme Court has explained that the "'severe or pervasive'" standard "is an objective standard, based on 'an environment that a reasonable person would find hostile or abusive.'" Tourtellotte, 636 F. App'x at 846 (citing Harris, 510 U.S. at 21). "To determine if the alleged harassment is so hostile or abusive to rise to the level of an unlawful hostile environment, the Supreme Court directs courts to 'look[ ] at all the circumstances,' including the frequency of the alleged conduct." Id. (alteration in original) (quoting Harris, 510 U.S. at 23) (citation omitted). "'The question of whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Flores v. Charlton, Civ. A. No. 17-4848, 2019 WL 3801951, at *3 (E.D. Pa. Aug. 13, 2019) (quoting Moody, 870 F.3d at 215). "'Isolated incidents and offhanded comments . . . are not sufficient to sustain a hostile work environment claim,' 'even if they

14

engender offensive feelings in an employee.'" Id. at *4 (alteration in original) (first quoting Stucke v. City of Phila., 685 F. App'x 150, 153 (3d Cir. 2017); then quoting Greer v. Mondelez Global, Inc., 590 F. App'x 170, 173 (3d Cir. 2014)).

With regard specifically to Heydorn, the Amended Complaint alleges that Lebisky made frequent comments that "Heydorn could crush his head with her thighs" which, since Heydorn was only employed by Everstory for nine months, must have been made within nine months of the underpants incident. (See Am. Compl. ¶¶ 27, 50, 77, 79.) Viewing the allegations of frequency in the Amended Complaint in the light most favorable to Heydorn, we conclude that these allegations satisfy the frequency aspect of the severe and pervasive requirement. Moreover, while Lebisky's comments and the underpants incident may not have been physically threatening, they were clearly humiliating and more than mere offensive utterances.[3]  See Flores, 2019 WL 3801951, at *3. We therefore conclude that these allegations satisfy the severity aspect of the severe and pervasive requirement. We therefore also conclude that the Amended Complaint plausibly pleads the second element of a hostile work environment claim with respect to Heydorn.

The Amended Complaint does not allege that any of the sexually harassing comments made by Sobon or Lebisky were directed at the remaining Motion Plaintiffs, i.e., Sheehan, Polascak, and Iannacone. Plaintiffs argue that these three Plaintiffs have nonetheless stated facially plausible hostile work environment claims based on the sexual harassment allegedly directed to other employees, including the alleged comments and conduct addressed to Heydorn, Hernandez, and

---

[3] Defendants insisted, during our September 4, 2025 Hearing, that Lebisky's frequent comments to Heydorn, in front of the other Plaintiffs, concerning the "perceived size of [her] thighs" and that she "could crush his head with her thighs" solely concerned Heydorn's strength and weight, and had nothing to do with sex. (Am. Compl. ¶ 41.) However, in the context of the Amended Complaint's allegations as a whole, and particularly in combination with the underpants incident, these comments have undeniable sexual overtones and thus, we reject Defendants' assertions to the contrary.

other unnamed female employees.  See <u>Velez v. QVC, Inc.</u>, 227 F. Supp. 2d 384, 410 (E.D. Pa. 2002) (noting that "a plaintiff may rely upon incidents involving other employees to show the presence of a hostile work environment").  The  United States Court of Appeals for the Third Circuit explained in <u>Tourtellotte</u> that the "totality of the circumstances approach . . . allows courts to consider the larger context in which the alleged incidents occur in hostile work environment claims."  636 F. App'x at 847 (citing <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1474 (3d Cir. 1990)).  At the same time, plaintiffs relying on conduct directed towards others must also plausibly allege how the conduct directed at others impacted them in order to state a cognizable hostile work environment claims.  <u>Id.</u> at 847-48.

Here, the Amended Complaint alleges that some of the Plaintiffs heard Sobon and Lebisky refer to an unnamed female employee "as a 'cunt' and a 'useless bitch'" and that all of the Plaintiffs were aware of this comment.  (Am. Compl. ¶¶ 34-35.)  Plaintiffs also heard Lebisky frequently comment "that the building in which the Plaintiffs worked was 'nothing but a fucking sorority.'" (<u>Id.</u> ¶ 38.)  All of the Plaintiffs also witnessed Lebisky frequently make sexual comments to Hernandez, such as "'your tits look great,'" and likewise witnessed Lebisky state that "'Heydorn could crush his head with her thighs.'"  (<u>Id.</u> ¶¶ 39-42.)  In addition, all of the Plaintiffs but Heydorn witnessed the Lift 5000 incident and all of the Plaintiffs witnessed the underpants incident.  (<u>Id.</u> ¶¶ 47-50.)  Moreover, the Amended Complaint adequately alleges that all of the above comments were made, and the above incidents occurred, within the year preceding the termination of Plaintiffs' employment with Everstory Partners in March 2023.  It does so by alleging that the Lift 5000 incident occurred in March 2022, and that Heydorn, who started working for Everstory Partners in June 2022, was present for or at least aware of the "cunt" and "useless bitch" comment, the "fucking sorority" comment, the underpants incident, and the sexually harassing comments

16

that Lebisky made to Hernandez and Heydorn.  (Id. ¶¶ 27, 34-35, 38, 39-42, 47, 50-51.)  Viewing

these allegations in the light most favorable to Plaintiffs, as we must when we apply the 12(b)(6)

standard, we conclude that the Amended Complaint plausibly alleges that the sexually harassing

conduct at Plaintiffs' place of work was pervasive.[4]  Furthermore, while the Amended Complaint

does not allege that any of Lebisky's comments or conduct was physically threatening, we find

that it plausibly alleges that his comments and conduct were humiliating and more than mere

offensive utterances.  See Flores, 2019 WL 3801951, at *3.  We therefore conclude that the

Amended Complain plausibly alleges that second element of a hostile work environment claim

with respect to all of the Motion Plaintiffs.

### c.    The Effect of This Conduct

As we noted above, in order to satisfy the third and fourth elements of a hostile work

environment claim, the Amended Complaint must plausibly allege that the sexual harassment

detrimentally affected the plaintiffs and that this conduct "would detrimentally affect a reasonable

person in like circumstances."  Moody, 870 F.3d at 213.  Defendants contend that the Amended

Complaint fails to satisfy these factors.  The Amended Complaint specifically alleges that all of

the Plaintiffs were adversely affected by the hostile work environment.  (Am. Compl. ¶ 110.)

---

[4] Defendants asserted during our September 3, 2025 Hearing that the Amended Complaint
does not plausibly allege that the sexual harassing comments made by Lebisky were pervasive
because the Amended Complaint's allegations that Lebisky made those comments "frequently"
could mean that they occurred as few as two times.  (See Am. Compl. ¶¶ 38, 39, 41.)  However,
when we apply the 12(b)(6) standard, "'all well-pleaded allegations of the complaint must be taken
as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn
in favor of them.'"  St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp., 967 F.3d 295, 299
(3d Cir. 2020)  (quoting McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009)).  The Oxford
English Dictionary defines "frequently" as "[a]t frequent or short intervals, often, repeatedly."
Oxford English Dictionary,  https://www.oed.com/dictionary/frequently_adv?tab=meaning_and_
use#3699174 (last visited Sept. 5, 2025).  This established definition thus allows for the reasonable
inference that Lebisky made the comments attributed to him much more than twice, and we reject
Defendants' contrary assertion.

Moreover, we easily conclude that the allegations of Lebisky's frequently repeated comments that the Plaintiffs' workplace was "a fucking sorority," that Hernandez's "tits look great," and that Heydorn could crush his head with her thighs, together with the Lift 5000 and underpants incidents, give rise to an inference that a reasonable person in like circumstances would have been detrimentally.  See Mandel, 706 F.3d at 168 (finding that an objectively reasonable person could be offended by comments made by supervisors referring to a female employee as "'darling,' 'the woman,' 'fluffy,' 'missy,' 'hon,' and 'toots'; having her body, clothing, and physical appearance commented on; being told that she was 'foolish not to use [her] assets . . . [and] being told [by a manager] that he fantasized about her while he was having sex with his wife" (first alteration in original)).  We thus conclude that the Amended Complaint sufficiently alleges the third and fourth elements of a hostile work environment claim.

> ### d.    Respondeat Superior Liability

Finally, as set forth above, to satisfy the fifth element of a hostile work environment claim, a complaint must allege the existence of respondeat superior liability.[5]  Moody, 870 F.3d at 213 (quoting Mandel, 706 F.3d at 167).  "'An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.'"  Castleberry v. STI Grp., 863 F.3d 259, 266 n.1 (3d Cir. 2017) (quoting Faragher, 524 U.S. at 807).  The Amended Complaint alleges that Lebisky was Everstory's Funeral Director and General Manager.  (Am. Compl. ¶ 34.)  We therefore infer that he was a supervisor with authority over Plaintiffs, who were all employed by Everstory at Kirk & Nice Suburban Chapel and Sunset Memorial Park.  (Id. ¶ 32.)  We conclude, accordingly,

---

[5] Defendants have not addressed this aspect of Plaintiff's hostile work environment claims.

that the Amended Complaint plausibly alleges respondeat superior liability with respect to the

Motion Plaintiffs' hostile work environment claim against Everstory.  In light of this conclusion,

as well as our prior conclusions regarding the other elements of a hostile work environment claim,

we ultimately conclude that the Amended Complaint states a facially plausible hostile work

environment claim based on sexual harassment on behalf of all of the Motion Plaintiffs.

   C. <u>The Application of the EFAA</u>

   Having found that the Amended Complaint alleges facially plausible hostile work

environment claims based on sexual harassment pursuant to Title VII and the PHRA on behalf of

all of the Motion Plaintiffs, we further find that the EFAA applies to Plaintiffs' hostile work

environment claims.  As we discussed above, the EFAA provides that "at the election of the person

alleging conduct constituting a sexual harassment dispute," a pre-dispute arbitration agreement

will be invalid and unenforceable "with respect to a case which is filed under Federal, Tribal, or

State law and relates to the . . . sexual harassment dispute."[6]  9 U.S.C. § 402(a).  Plaintiffs maintain

---

[6] Defendants argue that the EFAA doesn't apply to Plaintiffs' claims because the EFAA only applies to sexual harassment disputes that arose after the EFAA was enacted on March 3, 2022.  <u>See</u> <u>Steinberg v. Capgemini Am., Inc</u>., Civ. A. No. 22-489, 2022 WL 3371323, at *2 (E.D. Pa. Aug. 16, 2022) ("[T]he EFAA only applies to any 'dispute or claim that arises or accrues on or after the date of the enactment of this Act,' and the EFAA was enacted on March 3, 2022." (quoting EFAA, Pub. L. No. 117-90, 136 Stat. 26 (2022)).  Defendants assert that the Amended Complaint does not specify the dates of the majority of the alleged sexual harassment incidents and that we cannot, therefore, determine whether the EFAA applies to those incidents.  Defendants appear to reason that because some of the alleged incidents may have occurred before March 3, 2022, any disputes or claims related those incidents also arose or accrued prior to March 3, 2022.  However, that is not how this Circuit has understood Congress's language that the EFAA applies to any "dispute or claim that arises or accrues on or after the date of the enactment of this Act."  <u>Id.</u> (quotation omitted).  The Third Circuit instructed in <u>Cornelius</u> that courts should apply the ordinary meaning of the word "dispute" in this context and that "the ordinary meaning of that word involves some opposition or disagreement between the parties."  133 F.4th at 247.  The Third Circuit explained that, "[i]n [its] view, a 'dispute . . . arises' when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position."  <u>Id.</u> (citation omitted).  The Third Circuit further clarified that a dispute thus "requires some opposition between the employer

that if we find that the EFAA applies to any of their claims, the Arbitration Agreements that they signed are unenforceable as to the entire Amended Complaint.  Plaintiffs rely on <u>Johnson v. Everyrealm, Inc.</u>, 657 F. Supp. 3d 535 (S.D.N.Y. 2023).

The plaintiff in <u>Johnson</u> was a former employee of Everyrealm who had entered into an arbitration agreement with Everyrealm as a condition of his employment.  <u>Id.</u> at 539.  He brought an action against Everyrealm asserting claims for race discrimination, pay discrimination, sexual harassment hostile work environment, and discrimination on the basis of gender and race in violation of federal and state law.  <u>Id.</u> at 539-540.  The district court found that Johnson's complaint stated a plausible claim of sexual harassment in violation of state law and the parties disputed whether the EFAA "render[ed] [the] arbitration clause unenforceable as to the entire case involving a viably pled sexual harassment dispute, as opposed to merely the claims in the case that pertain to the alleged sexual harassment."  <u>Id.</u> at 540.  The <u>Johnson</u> Court determined that the EFAA allowed the plaintiff to block enforcement of the arbitration agreement with respect to all of his claims.  <u>Id.</u> at 558.  The District Court based its analysis on the plain meaning of Congress's language in the EFAA:

> In its operative language, the EFAA makes a pre-dispute arbitration agreement invalid and unenforceable "with respect to a *case* which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added).  This text is clear, unambiguous, and decisive as to the issue here.  It keys the scope of the invalidation of the arbitration clause to the entire "case" relating to the sexual harassment dispute.  It thus does not limit the invalidation to the claim or claims in which that dispute plays a part.

and employee but is not tethered to a particular process.  Thus, a dispute can arise upon the filing of an internal complaint, so long as the employer expressly or constructively disagrees with the employee's position." <u>Id.</u> at 248.  According to the Amended Complaint, Plaintiffs complained to Everstory's HR Department and to their General Manager about discrimination in February 2023, after the enactment of the EFAA.  (<u>See</u> Am. Compl. ¶¶ 63- 67.)  Therefore, the Amended Complaint plausibly alleges that Plaintiffs' dispute arose after the enactment of the EFAA.  <u>See</u> <u>Cornelius</u>, 113 F.4th at 247.  We therefore deny the Motion to Compel Arbitration as to this argument.

The term "case" is familiar in the law. Dictionaries define a "case" as "a suit or action in law or equity," *Case*, Merriam Webster, https://www.[merriam]-webster.com/dictionary/case (last visited Feb. 20, 2023), or "a civil or criminal proceeding, action, suit, or controversy at law or in equity," Black's Law Dictionary (11th ed. 2019); see United States v. Santos, 553 U.S. 507, 511 (2008) (using dictionaries in statutory construction). "[C]ase" thus captures the legal proceeding as an undivided whole. It does not differentiate among causes of action within it. The term "case" stands in contrast to the terms "claim" and "cause of action." A "claim" is "a right to something," *Claim*, Merriam Webster, https://www.merriam-webster.com/dictionary/claim (last visited Jan. 28, 2023), or "the assertion of an existing right; any right to payment or to an equitable remedy," Black's Law Dictionary (11th ed. 2019). A "cause of action" is "the grounds (such as violation of a right) that entitle a plaintiff to bring a suit," *Cause of Action*, Merriam Webster, https://www.merriam-webster.com/dictionary/cause% 20of% 20action (last visited Feb. 20, 2023), "a group of operative facts giving rise to one or more bases for suing," or "a factual situation that entitles one person to obtain a remedy in court from another person," Black's Law Dictionary (11th ed. 2019). Case law is, unsurprisingly, in accord. It underscores that a "case" or "action" refers to an overall legal proceeding filed in a court, whereas a "claim" or a "cause of action" refers to a specific assertable or asserted right within such a proceeding. See Brownback v. King, – U.S. –, 141 S. Ct. 740, 751 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit. Individual demands for relief within a lawsuit, by contrast, are 'claims.'" (internal citations omitted)) . . . .

Id. at 558-59 (alterations in original) (footnote omitted).

Many district courts in other Circuits have agreed with the Johnson court's analysis.[7]  See Bray v. Rhythm Mgmt. Grp., LLC, Civ. A. No. 23-3142, 2024 WL 4278989, at *8 (D. Md. Sept. 24, 2024) ("Numerous federal district courts have agreed with this analysis and have likewise held that the EFAA applies to an entire case, not just a sexual harassment claim within a case." (citing Turner v. Tesla, Inc., 686 F. Supp. 3d 917, 925 (N.D. Cal. 2023); Williams v. Mastronardi Produce, Ltd., Civ. A. No. 23-13302, 2024 WL 3908718, at *1 (E.D. Mich. Aug. 22, 2024); Molchanoff v. SOLV Energy, LLC, Civ. A. No. 23-653, 2024 WL 899384, at *4 (S.D. Cal. Mar. 1, 2024); Watson v. Blaze Media LLC, Civ. A. No. 23-279, 2023 WL 5004144, at *3 n.1 (N.D. Tex. Aug. 3, 2023)). The Bray court found Johnson's "analysis of the EFAA's plain and ordinary meaning" to be "both

_____

[7] This is, apparently, an issue of first impression in this Circuit.

comprehensive and persuasive." Id.  It also agreed with the Johnson court's determination "that Congress would not have used the term 'case,' and instead would have used the term 'claim,' had it intended to limit the EFAA's reach to sexual harassment claims only and to require severance and arbitration of other claims within the same case." Id. (citing Johnson, 657 F. Supp. 3d at 559). The Bray court therefore found "that the language of the EFAA establishes that Congress intended to bar enforcement of an arbitration clause over all claims within a civil action when the case in some way 'relates to' a sexual harassment dispute." Id. (quoting 9 U.S.C. § 402(a)). More recently, the court in Lambert v. New Start Cap. LLC, Civ. A. No. 24-8055, 2025 WL 2295254 (S.D.N.Y. Aug. 7, 2025), observed that courts in the Southern District of New York "almost uniformly hold that 'if the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to' the plaintiff's 'entire case.'" Id. at *13 (quoting Diaz-Roa v. Hermes Law, P.C., 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024)) (citing Johnson, 657 F. Supp. 3d at 558-61; Delo v. Paul Taylor Dance Found., Inc., 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023); Baldwin v. TMPL Lexington LLC, Civ. A. No. 23-9899, 2024 WL 3862150, at *7-8 (S.D.N.Y. Aug. 19, 2024); Puris v. TikTok Inc., Civ. A. No. 24-944, 2025 WL 343905, at *6 (S.D.N.Y. Jan. 30, 2025)).

Defendants argue that even if the Court finds that the EFAA applies to some of Plaintiffs' claims, Plaintiffs' wrongful discharge and Wage Payment and Collection Law claims must be arbitrated because those claims are not related to Plaintiffs' sexual harassment hostile work environment claims.  Defendants rely on Mera v. SA Hospitality Group, LLC, 675 F. Supp. 3d 442 (S.D.N.Y. 2023), in which the court ordered arbitration of the plaintiff's wage and hour claims even though the plaintiff's hostile work environment claims were blocked from arbitration by the EFAA.  Id. at 488.  The Mera court determined that the EFAA makes arbitration agreements unenforceable only to the extent the case relates to sexual harassment disputes:

> Under the EFAA, "at the election of the person alleging conduct constituting a sexual harassment dispute," a predispute arbitration agreement is unenforceable "with respect to a case which is filed under Federal, Tribal, or State law *and relates to* . . . the sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis supplied). Plaintiff argues that, under the EFAA, the arbitration agreement is unenforceable, not only as to his sexual harassment-related claims, but as to his entire case, including his unrelated wage and hour claims under the FLSA and the NYLL, which are pled as to a broad group of individuals in addition to Plaintiff. The Court disagrees.
>
> The Court holds that, under the EFAA, an arbitration agreement executed by an individual alleging conduct constituting a sexual harassment dispute is unenforceable only to the extent that the case filed by such individual "relates to" the sexual harassment dispute, see 9 U.S.C. § 402(a); in other words, only with respect to the claims in the case that relate to the sexual harassment dispute. To hold otherwise would permit a plaintiff to elude a binding arbitration agreement with respect to wholly unrelated claims affecting a broad group of individuals having nothing to do with the particular sexual harassment affecting the plaintiff alone.

Id. at 447 (record citation omitted). However, we disagree with the holding in Mera. The Mera court's interpretation of the EFAA "would require courts to carve up every case to which the EFAA applies by reaching judgment—with respect to each claim—on whether the claim relates to the sexual harassment or sexual assault dispute." Diaz-Roa, 757 F. Supp. 3d at 532 n.9. This "approach not only is antithetical to the language of the EFAA and its protective intent, but it would also have the court address early in a case and in a definitive manner 'a question that often is not easily answered on the pleadings.'" Id. (citing Doe v. Second St. Corp., 326 Cal. Rptr. 3d 42 (Cal. Ct. App. 2024)) (quoting Alvarado v. Sweetgreen, Inc., 712 F. Supp. 3d 393, 406 (S.D.N.Y. 2024)). As the Diaz-Roa court explained, "[i]t is not self-evident for example, that evidence that the plaintiff was the victim of persistent sexual assault or harassment would be irrelevant to the claim that such person had also been deprived of her rights to a minimum wage and overtime pay." Id.

We agree with the reasoning of Johnson and Diaz-Roa, and we conclude that "if the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with

respect to the plaintiff's entire case." <u>Lambert</u>, 2025 WL 2295254, at *13 (quotation and citations omitted). We further conclude, accordingly, that Plaintiffs have properly invoked the EFAA in this case and that Plaintiffs' Arbitration Agreements are thus invalid and unenforceable with respect to the entire case asserted in the Amended Complaint. Accordingly, we deny the Motion to Compel Arbitration in its entirety.

## IV.    CONCLUSION

For the reasons set forth above, we have found that Plaintiffs have pled facially plausible hostile work environment claims under state and federal law and, consequently, that the EFAA applies in this case. Accordingly, we deny Defendants' Motion to Compel Arbitration in its entirety. An order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.