IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CIARA SHEEHAN, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EVERSTORY PARTNERS, ET AL. | : | NO.  24-6581 |

**<u>MEMORANDUM</u>**

**Padova, J.**                                                                       **December 23, 2025**

Plaintiffs Ciara Sheehan, Justine Heydorn, Lisa Polascak, Tara Iannacone, and Lorraine Hernandez, former employees of Defendant Everstory Partners ("Everstory"), have brought this action against Everstory and Matthew Sobon, their former supervisor, asserting federal and state law claims of sex discrimination, sexual harassment, and retaliation, as well as a state law claim of wrongful discharge and a claim under Pennsylvania's Wage Payment and Collection Law. Defendants have filed a Motion to Dismiss the First Amended Civil Complaint ("Amended Complaint") in part, asking this Court to dismiss all of Plaintiffs' claims with the exception of Polascak's Wage Payment and Collection Law claim. We deny the Motion for the reasons set forth below.

## I.    FACTUAL BACKGROUND

The Amended Complaint alleges the following facts. Everstory owns funeral homes and cemeteries, including Kirk & Nice Suburban Chapel and Sunset Memorial Park in Huntingdon Valley, Pennsylvania, where all of the Plaintiffs worked. (Am. Compl. ¶¶ 6, 32.) Sobon is an employee of Everstory and was Plaintiffs' supervisor. (Id. ¶ 10.) Plaintiffs began working for Everstory at different times, with Hernandez starting in August 2015, Polascak starting in December 2019, Sheehan starting in August 2021, Iannacone starting in November 2021, and Heydorn starting in June 2022. (Id. ¶¶ 26-30.)

Plaintiffs heard Sabon and Funeral Director and General Manager Joe Lebisky make sexual remarks while they were employed by Everstory.  In one instance, some of the Plaintiffs heard Sabon and Lebisky refer to an unidentified female employee of Everstory as a "cunt" and a "useless bitch." (Id. ¶ 34.)  The other Plaintiffs were aware of these comments.  (Id. ¶ 35.)  In addition, Lebisky frequently commented in front of Plaintiffs that the building in which Plaintiffs worked was "nothing but a fucking sorority."  (Id. ¶ 38.)  He also made sexual comments to Plaintiffs Hernandez and Heydorn.  Specifically, Lebisky frequently made comments to Hernandez such as "your tits look great," which the other Plaintiffs witnessed.  (Id. ¶¶ 39-40.)  Lebisky also repeatedly stated that Heydorn "could crush his head with her thighs."  (Id. ¶ 41 (emphasis omitted).)  Plaintiffs all heard Lebisky make these comments to Heydorn.  (Id. ¶ 42.)

Lebisky also engaged in performative sexual harassment directed towards Heydorn and two other female employees of Everstory.  On one occasion in July 2022, "Lebisky placed a pair of men's underpants in a high-traffic, common area . . . with a note to Plaintiff Heydorn stating that he could not wait to see her" (the "underpants incident").  (Id. ¶ 50.)  All of the Plaintiffs saw Lebisky's underpants and note.  (Id. ¶ 51.)  In May 2021, Lebisky "drew devil horns and a mustache" on a picture of an unidentified female employee and wrote "Fatal Attraction" on the picture to indicate that the female employee was sexually obsessed with him (the "Fatal Attraction picture").  (Id. ¶¶ 44, 45.)  Polascak and Hernandez both saw this picture.  (Id. ¶ 46.)  In March 2022, Lebisky wrote the name of an unidentified female employee, whom he perceived to be overweight, and the words "Lift 5000" on a lift in a common area (the "Lift 5000 incident").  (Id. ¶¶ 47-48.)  Sheehan, Iannacone, Polascak, and Hernandez saw the message on the lift.  (Id. ¶ 49.)  In addition, an unnamed manager repeatedly called Polascak "ugly" in March 2020.  (Id. ¶ 43.)

In 2022 and 2023, Plaintiffs complained about Defendants' violation of rules promulgated by the State Board of Funeral Directors, which Defendants had ordered Plaintiffs to violate. (Id. ¶¶ 52-53.) In one instance, Polascak refused Sobon's request that she illegally cremate a body without any paperwork, an incident that Sheehan reported to Everstory. (Id. ¶¶ 54, 58.) Sobon also asked "Polascak to violate the law by hiding the fact that a direct cremation package was sold by the cemetery to a family." (Id. ¶ 56.) When Polascak refused Sobon's requests that she violate the law, Sobon screamed at her and threatened to fire her. (Id. ¶¶ 55, 57.) Iannacone reported to Everstory that Sobon pressured her and other Plaintiffs to perform illegal disinterments without the proper paperwork, which Plaintiffs refused to do. (Id. ¶¶ 59-60.) In yet another incident, Everstory "pressured . . . Heydorn to illegally identify a body that had been placed in the wrong crypt without authorization," but Heydorn refused to violate the law. (Id. ¶¶ 61-62.)

On February 13, 2023, Polascak made a complaint of sex discrimination to Everstory's Human Resources Department. (Id. ¶ 63.) Plaintiffs Sheehan, Heydorn, Iannacone, and Hernandez all participated in the investigation of Polascak's complaint. (Id. ¶ 64.) Later that month, Sheehan, Heydorn, and Iannacone complained to their General Manager, Donald Underwood, that Sobon was discriminating against them on the basis of their sex. (Id. ¶¶ 65-66.) They asked Underwood to help them make a report to HR. (Id. ¶ 67.) Polascak attended the meeting with Underwood and also asked for his help in connection with her own complaint of sex discrimination. (Id. ¶ 68.) Instead of helping Plaintiffs, Underwood, in violation of company policy, told Sobon about their complaints of sex discrimination. (Id. ¶ 69.)

The weekend after Sobon learned about Polasack's sex discrimination complaint, he "continually called her and left multiple voicemail messages in an effort to intimidate her into withdrawing her complaint of discrimination." (Id. ¶ 71.) In addition, Everstory made escalating

threats to terminate Polascak if she refused to violate the law. (Id. ¶ 72.) Polascak was concerned that she would lose her licensure if Everstory fired her, so she resigned her job on February 24, 2023. (Id. ¶¶ 73-74.) Everstory failed to pay Polascak her final paycheck. (Id. ¶ 75.)

On March 20, 2023, about a month after they complained about sex discrimination, Sheehan, Heydorn, and Iannacone were suspended for violating Everstory's "policy by accepting and/or authorizing payment for performing pallbearing services" even though Everstory was aware that none of them had violated this policy. (Id. ¶¶ 77-78.) Everstory terminated Sheehan, Heydorn, and Iannacone on March 27, 2023. (Id. ¶ 79.) Sobon and Lebisky participated in Everstory's decision to terminate these Plaintiffs. (Id. ¶ 80.) A male employee who allegedly engaged in the same conduct was not disciplined or terminated. (Id. ¶ 81.)

On May 7, 2023, Hernandez made a complaint of sex discrimination to Lebisky. (Id. ¶¶ 82-83.) On May 15, 2023, Hernandez was terminated, purportedly due in part, to the language she used in making her complaint. (Id. ¶ 84.) Plaintiffs were all replaced by male employees. (Id. ¶ 85.)

The Amended Complaint asserts eight claims for relief. Count I is a claim brought by all Plaintiffs against Everstory for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Count II is a claim brought by all Plaintiffs against Everstory and Sobon for retaliation in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 et seq. Count III is a claim brought by all Plaintiffs against Everstory for disparate treatment sex discrimination in violation of Title VII. Count IV is a claim brought by all Plaintiffs against Everstory and Sobon for disparate treatment sex discrimination in violation of the PRHA. Count V is a claim brought by all Plaintiffs against Everstory for hostile work environment in violation of Title VII. Count VI is a claim brought by all Plaintiffs against

4

Everstory and Sobon for hostile work environment in violation of the PHRA. Count VII is a claim brought by Sheehan, Heydorn, Polascak, and Iannacone against Everstory for wrongful discharge in violation of Pennsylvania common law. Count VIII is a claim brought by Polascak against Everstory for failure to pay her all wages that it owed her in violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. § 260.1. et seq.

## II.    LEGAL STANDARD

Defendants have moved to dismiss Counts I through VII pursuant to Federal Rule of Civil Procedure 12(b)(6). When we apply Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "A complaint is properly dismissed for failing to state a claim 'if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility.'" Talley v. Pillai, 116 F.4th 200, 206 (3d Cir. 2024) (alteration in original) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)). "[W]e need not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. MarketPlace, PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  A complaint fails to allege a facially plausible claim if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

## III.    DISCUSSION

### A.    Hostile Work Environment

Defendants argue that Counts V and VI should be dismissed because the Amended Complaint fails to allege plausible claims that Defendants created a hostile work environment based on sexual harassment in violation of Title VII and the PHRA on behalf of any of Plaintiffs. We analyze Plaintiffs' claims under Title VII and the PHRA under the same standard.  See Faush v. Tuesday Morning, Inc., 808 F.3d 208, 213 (3d Cir. 2015) ("Claims brought under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 et seq., are generally 'interpreted coextensively with Title VII claims.'" (quoting Brown v. J. Kaz, Inc., 581 F.3d 175, 179 n.1 (3d Cir. 2009)).  A facially plausible hostile work environment claim must allege the following:  "'1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) [with regard to a claim brought against an employer] the existence of respondeat superior liability.'"  Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (quoting Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013)) (citation omitted).

We previously addressed Defendants' assertion that Counts V and VI should be dismissed with respect to the hostile work environment claims asserted by Sheehan, Heydorn, Polascak, and Iannacone in our Memorandum denying Defendants' Motion to Compel Arbitration and

"conclude[d] that the Amended Complaint states a facially plausible hostile work environment claim based on sexual harassment on behalf of [Sheehan, Heydorn, Polascak, and Iannacone]." See Sheehan v. Everstory Partners, Civ. A. No. 24-6581, 2025 WL 2671056, at *7-9 (E.D. Pa. Sept. 17, 2025). That conclusion is now the law of this case. See Home Depot USA, Inc. v. Lafarge N. Am., Inc., 59 F.4th 55, 61 (3d Cir. 2023) ("The law of the case doctrine 'prevents reconsideration of legal issues already decided in earlier stages of a case.'" (quoting Bedrosian v. IRS, 42 F.4th 174, 181 (3d Cir. 2022))). Therefore, in connection with this Motion, we need only address Defendants' arguments with respect to Hernandez's hostile work environment claim.

1.    Intentional Discrimination on the Basis of Sex

Defendants argue that the Amended Complaint fails to allege the first element of a facially plausible hostile work environment claim on behalf of Hernandez because its allegation that "Lebisky would frequently make sexual comments to Plaintiff Hernandez such as '[Plaintiff Hernandez], your tits look great" (Am. Compl. ¶ 39 (emphasis omitted)) is insufficient to support a reasonable inference that Hernandez suffered intentional discrimination because of her sex. We note that, while this is the Amended Complaint's only allegation of a sexually harassing remark made directly to Hernandez by Lebisky, it is not the only allegation of a sexually harassing remark or sexually harassing conduct that Hernandez personally experienced or witnessed, or of which she was aware. As we described above, the Amended Complaint alleges that some of the Plaintiffs heard Sobon and Lebisky "refer to a female employee as a 'cunt' and a 'useless bitch'" and that all of the Plaintiffs were aware of these remarks. (Am. Compl. ¶¶ 34-35.) All of the Plaintiffs are also alleged to have witnessed Lebisky making frequent comments that the building in which they worked was "'nothing but a fucking sorority.'" (Id. ¶ 38.) Lebisky frequently said, in front of all Plaintiffs that Heydorn "could crush his head with her thighs." (Id. ¶¶ 41-42 (emphasis omitted).)

7

The Amended Complaint also alleges that Hernandez saw the Fatal Attraction picture, the Lift 5000 incident, and the underpants incident. (See id. ¶¶ 44, 46, 47-51.) The Amended Complaint also alleges that "[a]ll Plaintiffs were adversely affected by the aforementioned hostile work environment on the basis of sex." (Id. ¶¶ 110, 114 (emphasis omitted).) Viewing these allegations of the Amended Complaint in the light most favorable to Hernandez, we conclude that the Amended Complaint plausibly alleges that Hernandez was subjected to intentional sexual harassment and thereby satisfies the pleading requirement for the first element of a hostile work environment claim on her behalf. We therefore deny the Motion to Dismiss with respect to this argument.

2.    The Severity or Pervasiveness of the Sexual Harassment

Defendants also argue that the Amended Complaint fails to plausibly allege the second element of a hostile work environment claim, i.e., that Hernandez suffered sexual harassment that was severe or pervasive. The Supreme Court has explained that the "'severe or pervasive'" standard "is an objective standard, based on 'an environment that a reasonable person would find hostile or abusive.'" Tourtellotte v. Eli Lilly & Co, 636 F. App'x 831, 846 (3d Cir. 2016) (citing Harris v. Forklift Sys., Inc., 510 U.S.17, 21 (1993)). "To determine if the alleged harassment is so hostile or abusive to rise to the level of an unlawful hostile environment, the Supreme Court directs courts to 'look[] at all the circumstances,' including the frequency of the alleged conduct." Id. (alteration in original) (quoting Harris, 510 U.S. at 23) (citation omitted). "'The question of whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Flores v. Charlton, Civ. A. No. 17-4848, 2019

WL 3801951, at *3 (E.D. Pa. Aug. 13, 2019) (quoting Moody, 870 F.3d at 215). "'Isolated incidents and offhanded comments . . . are not sufficient to sustain a hostile work environment claim,' 'even if they engender offensive feelings in an employee.'" Id. at *4 (alteration in original) (first quoting Stucke v. City of Phila., 685 F. App'x 150, 153 (3d Cir. 2017); then quoting Greer v. Mondelez Global, Inc., 590 F. App'x 170, 173 (3d Cir. 2014)).

As we discussed in the preceding paragraph, the Amended Complaint alleges that "Lebisky made frequent sexual comments to Hernandez such as '[Hernandez] your tits look great.'" (Am. Compl. ¶ 39 (emphasis omitted).) Defendants argue that this allegation is insufficient to allege frequency because it does not specify "the actual frequency or dates of the alleged comments" and suggest that Lebisky only made this comment once, which, while inappropriate, would not be sufficient to establish a hostile work environment. (Defs. Mem. at 24.) However, when we apply the 12(b)(6) standard, "'all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.'" St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp., 967 F.3d 295, 299 (3d Cir. 2020) (quoting McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009)). The Oxford English Dictionary defines "frequently" as "[a]t frequent or short intervals, often, repeatedly." Oxford English Dictionary, https://www.oed.com/dictionary/frequently_adv?tab=meaning_and_use#369 9174 (last visited Dec. 2, 2025). This established definition thus allows for the reasonable inference that Lebisky made these comments significantly more than once, and we reject Defendants' contrary assertion. Viewing the allegations of frequency in the Amended Complaint in the light most favorable to Hernandez, we conclude that these allegations satisfy the frequency aspect of the severe or pervasive requirement. Moreover, while Lebisky's comments may not have been physically threatening, they were clearly humiliating and more than mere offensive

utterances.   See Flores, 2019 WL 3801951, at *3.  We therefore conclude that these allegations support a reasonable inference that the harassment of Hernandez was severe as well a frequent. For these reasons, we conclude that the Amended Complaint plausibly pleads the second element of a hostile work environment claim with respect to Herandez, and we deny the Motion to Dismiss with respect to this argument.

### 3.     The Effect of this Conduct

As noted above, in order to satisfy the third and fourth elements of a hostile work environment claim, the Amended Complaint must plausibly allege that the sexual harassment detrimentally affected Hernandez and that this conduct "'would detrimentally affect a reasonable person in like circumstances.'"  Moody, 870 F.3d at 213 (quoting Mandel, 706 F.3d at 167) (citation omitted).  Defendants contend that the Amended Complaint fails to satisfy these factors.  The Amended Complaint specifically alleges that all of the Plaintiffs were adversely affected by the hostile work environment.  (Am. Compl. ¶ 110.)  Moreover, we easily conclude that the allegations of Lebisky's frequently repeated comments that the Plaintiffs' workplace was "a fucking sorority," that Hernandez's "tits look great," and that Heydorn could crush his head with her thighs, together with the Fatal Attraction picture and the Lift 5000 and underpants incidents, give rise to an inference that a reasonable person in like circumstances would have been detrimentally affected. See Mandel, 706 F.3d at 161, 168 (finding that an objectively reasonable person could be offended by comments made by supervisors who referred to a female employee as "'darling,' 'the woman,' 'fluffy,' 'missy,' 'hon,' and 'toots'; having her body, clothing, and physical appearance commented on; being told that she was 'foolish not to use [her] assets . . . [and] being told [by a manager] that he fantasized about her while he was having sex with his wife" (first alteration in original)).  We thus conclude that the Amended Complaint sufficiently alleges the third and fourth

elements of a hostile work environment claim on behalf of Hernandez and we deny the Motion to Dismiss with respect to this argument. Having rejected all of Defendants' arguments that the Amended Complaint fails to plausibly allege a claim of hostile work environment against Everstory, we deny the Motion to Dismiss with respect to Count V of the Amended Complaint and with respect to Plaintiffs' claim against Everstory in Count VI.

        4.    <u>Sobon</u>

Defendants also argue that we should dismiss Plaintiffs' claim of hostile work environment in violation of the PHRA against Sobon in Count VI because the Amended Complaint does not allege that he aided and abetted, or personally engaged in, sexually harassing conduct against Plaintiffs. "'The PHRA allows individual supervisors to be held liable for aiding and abetting an employer's violation of the PHRA under 43 P.S. § 955(e).'" <u>Lara v. Samuel Adams Pa. Brewing Co.</u>, Civ. A. No. 20-0498, 2020 WL 5211206, at *14 (E.D. Pa. Sept. 1, 2020) (quoting <u>Merces-Clark v. Pennsylvania</u>, Civ. A. No. 13-2111, 2013 WL 6096324, at *3 (E.D. Pa. Nov. 19, 2013)). "'[A] supervisory employee may also be found liable for direct acts of discrimination under § 955(e) if the supervisor shared the intent and purpose of his employer.'" <u>Id.</u> (quoting <u>Merces-Clark</u>, 2013 WL 6096324, at *3). "[T]o make out a PHRA claim for aiding and abetting against an individual employee, the plaintiff must show that the defendant knew about and substantially assisted or encouraged the discrimination that the plaintiff experienced." <u>Lett v. Se. Pa. Transp. Auth.</u>, Civ. A. No. 19-3170, 2022 WL 4542093, at *19 (E.D. Pa. Sept. 27, 2022) (citing <u>Failla v. City of Passaic</u>, 146 F.3d 149, 157-58 (3d Cir. 1998); <u>Landy v. Fed. Deposit Ins. Corp.</u>, 486 F.2d 139, 162-63 (3d Cir. 1973)). N ascertaining "whether a defendant provided substantial encouragement or assistance, the Court considers 'the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the

other and his state of mind.'" Id. at *20 (quoting Restatement (Second) of Torts § 876(b), cmt. on

clause (b)) (citing Jackson v. T&N Van Serv., 117 F. Supp. 2d 457, 465 (E.D. Pa. 2000)).   The

United States Corut of Appeals for the Third Circuit has also found that "repeatedly refus[ing] to

take prompt action to end the harassment directed at [a] Plaintiff . . . would constitute aiding and

abetting."  Dici v. Pennsylvania, 91 F.3d 542, 553 (3d Cir. 1996).

The Amended Complaint alleges that some of the Plaintiffs heard Sobon personally engage

in one act of sexually harassing conduct by referring to a woman who was employed by Everstory

as "a 'cunt' and a 'useless bitch.'"  (Am. Compl. ¶ 34 (emphasis omitted).)  The Amended

Complaint also alleges that, the weekend after Sobon learned that Polascak had made a complaint

of discrimination, he "continually called her and left multiple voicemail messages in an effort to

intimidate her into withdrawing her complaint of discrimination."  (Id. ¶ 71.)  Viewing these

allegations in the light most favorable to Plaintiffs, we conclude that they sufficiently allege that

Sobon personally was aware of  the harassment of Polascak through her complaint and not only

took no action to end that harassment but actively attempted to prevent her from pursuing her

complaint by intimidating her.  We thus conclude that the Amended Complaint plausibly alleges

that Sobon aided and abetted sexual harassment in violation of the PHRA.  See Dici, 91 F.3d at

553.

Based on our prior determination that the Amended Complaint alleges facially plausible

hostile work environment claims in Counts V and VI on behalf of Plaintiffs Sheehan, Heydorn,

Polascak, and Iannacone, and our conclusion here that Counts V and VI of the Amended Complaint

state facially plausible hostile work environment claims based on sexual harassment on behalf of

Hernandez, and that the Amended Complaint plausibly alleges a hostile work environment claim

in violation of the PHRA against Sobon, we deny the Motion to Dismiss as to both Counts V and VI of the Amended Complaint.

      B.    <u>Sexual Discrimination – Disparate Treatment</u>

Count III of the Amended Complaint asserts a claim for disparate treatment sex discrimination in violation of Title VII against Everstory and Count IV asserts a claim of disparate treatment sex discrimination in violation of the PHRA against Everstory and Sobon.  Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).  The PHRA similarly makes it unlawful for any employer to "refuse to hire or employ or contract with, or to bar or to discharge from employment [an] individual  . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract" on the basis of "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability . . . ." 43 Pa. Stat. Ann. § 955(a).  Disparate treatment claims under Title VII and the PHRA "are governed by essentially the same legal standards." <u>Connelly v. Lane Constr. Corp.</u>, 809 F.3d 780, 791 n.8 (3d Cir. 2016) (citation omitted).  Defendants ask us to dismiss Counts III and IV on the ground that the Amended Complaint fails to allege a facially plausible disparate treatment claim on behalf of any Plaintiff.

Where, as here, a complaint does not allege direct evidence of discrimination, we review discrimination claims using the burden shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>McMullen v. Arcadia Univ.</u>, 779 F. App'x 916, 918 (3d Cir. 2019).

The United States Court of Appeals for the Third Circuit has explained the <u>McDonnell Douglas</u> framework for sex discrimination claims as follows:

> Under this framework, a plaintiff must establish a prima facie case of sex discrimination, which requires showing that she (1) "is a member of a protected class;" (2) is "qualified for the position" she seeks to retain; (3) "suffered an adverse employment action;" and that (4) "'the action occurred under circumstances that could give rise to an inference of intentional discrimination."

<u>Id.</u> (quoting <u>Makky v. Chertoff</u>, 541 F.3d 205, 214 (3d Cir. 2008)). "'The burden of establishing a prima facie case of disparate treatment is not onerous.'" <u>Id.</u> (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)). "To establish the fourth element [of a prima facie case of sex discrimination], a plaintiff may either: (1) introduce evidence of comparators . . .; or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." <u>Greene v. Virgin Islands Water & Power Auth.</u>, 557 F. App'x 189, 195 (3d Cir. 2014) (citation omitted).

### 1.    Polascak

Defendants argue that the Amended Complaint fails to allege a plausible disparate treatment sex discrimination claims with respect to Polascak because it fails to plead that Defendants took adverse any action against her. "What constitutes an 'adverse employment' action for purposes of Title VII's anti-discrimination provision is not a heavy lift, but it is not weightless." <u>Smith v. Phillips & Assoc., Inc.</u>, Civ. A. No. 24-0476, 2025 WL 2725932, at *8 (W.D. Pa. Sept. 25, 2025) (quoting <u>Betts v. Summit Oaks Hosp.</u>, 687 Fed. App'x. 206, 207 (3d Cir. 2017) (citing <u>Cavanaugh v. Wal-Mart Stores E., LP.</u>, 733 F. Supp. 3d 362, 369 (M.D. Pa. 2024), <u>appeal dismissed sub nom.</u> <u>Cavanaugh v. WalMart Stores E. LP</u>, No. 24-2077, 2024 WL 5055841 (3d Cir. Oct. 22, 2024)). To satisfy the requirement that a complaint allege an adverse employment action, "an employee must [allege] only 'some harm' or 'disadvantageous change' with respect to 'an

identifiable term or condition of employment.'" Stallworth v. Milan Laser Corp., Civ. A. No. 25-0393, 2025 WL 2637234, at *4 (E.D. Pa. Sept. 12, 2025) (quoting Muldrow v. City of St. Louis, 601 U.S. 346, 347 (2024)). The complaint need not allege "that the harm incurred was 'significant,'" Muldrow, 601 U.S. at 355 (citations omitted), because the Supreme Court in Muldrow "expressly rejected the rule that the harm an employee suffers must be 'significant . . . [o]r serious, or substantial, or any similar adjective." McCrorey v. City of Phila., No. 23-2539, 2025 WL 1392164, at *3 (3d Cir. May 14, 2025) (alterations in original) (quoting Muldrow, 601 U.S. at 355). Rather, "an adverse employment action means . . . that the employer treated the employee 'worse' because of a protected characteristic." Peifer v. Bd. of Prob. & Parole, 106 F.4th 270, 277 (3d Cir. 2024) (quoting Muldrow, 601 U.S. at 355). Thus, an "employee claiming discrimination is only required to show they suffered 'some harm' with respect to 'an identifiable term or condition of employment.'" McCrorey, 2025 WL 1392164, at *3 (quoting Muldrow, 601 U.S. at 355). Nonetheless, "while Muldrow lowered an employee's burden of proof with respect to adverse employment actions, the employee must still demonstrate an 'injury respecting [his] employment terms or conditions' to establish an adverse employment action." Gabriel v. DSM Biomedical, Inc., Civ. A. No. 24-4546, 2025 WL 2250265, at *7 (E.D. Pa. Aug. 6, 2025) (quoting Muldrow, 601 U.S. at 348, 359) (citing Peifer, 106 F.4th at 277). "If proven, a hostile work environment and constructive termination both constitute adverse employment actions." Id. at *8 (citing Greer v. Mondelez Glob., Inc., 590 F. App'x 170, 173 (3d Cir. 2014); Green v. Brennan, 578 U.S. 547, 555 (2016); Hill v. Borough of Kutztown, 455 F.3d 225, 247, n.32 (3d Cir. 2006)).

Defendants argue that the First Amended Complaint fails to allege a facially plausible disparate treatment sex discrimination claim as to Polascak because it does not allege that Everstory terminated her employment. (See Am. Compl. ¶ 74.) However, the Amended Complaint

need not allege that Polascak was fired in order to allege that she suffered an adverse employment action. See McCrorey, 2025 WL 1392164, at *3. Rather, it is enough allege that she experienced a hostile work environment. See Gabriel, 2025 WL 2250265, at *8. We concluded, in our Memorandum denying Defendants' Motion to Compel Arbitration, that the Amended Complaint plausibly alleges that Defendants subjected Polascak to a hostile work environment in violation of Title VII and the PHRA. See Sheehan, 2025 WL 2671056, at *9. Accordingly, we further conclude that the Amended Complaint plausibly alleges that Defendants took an adverse action against Polascak. See Gabriel, 2025 WL 2250265, at *8. We therefore deny the Motion to Dismiss with respect to this argument.

> 2.     Sheehan, Heydorn, and Iannacone

Defendants argue that we should dismiss the Amended Complaint's disparate claims with respect to Sheehan, Heydorn, and Iannacone because the Amended Complaint fails to plausibly allege that their sex was a but-for cause of their terminations. As we mentioned above, to allege a prima facie case of disparate treatment sex discrimination in violation of Title VII and the PHRA, the Amended Complaint must allege that the adverse action(s) suffered by Plaintiffs "'occurred under circumstances that could give rise to an inference of intentional discrimination.'" McMullen, 779 F. App'x at 918 (quoting Makky, 541 F.3d at 214). The Amended Complaint alleges that Plaintiffs Sheehan, Heydorn, and Iannacone were suspended on March 20, 2023, and fired on March 7, 2023, for violating certain company policies that they did not violate and also alleges that these Plaintiffs were treated differently from a male employee who violated these same policies but was neither disciplined nor terminated. (Am. Compl. ¶¶ 77-81.) The First Amended Complaint also alleges that all Plaintiffs were replaced by male employees. (Id. ¶ 85.)

16

Defendants argue that the First Amended Complaint fails to plausibly allege that Plaintiffs Sheehan, Heydorn, and Iannacone were suspended and terminated under circumstances that could give rise to an inference of intentional discrimination on the basis of their sex because it does not sufficiently describe the comparator, i.e., the male employee who was allegedly not disciplined or fired for violating the same policies that Plaintiffs were incorrectly accused of violating.  One way for a complaint to allege the inference of intentional discrimination, is "by pointing to a similarly-situated individual who is outside the plaintiff's protected class, who engaged in the same conduct as the plaintiff, but whom the defendant treated more favorably."  Solano v. Slippery Rock Univ. of Pa., Civ. A. No. 24-1542, 2025 WL 2403909, at *5 (W.D. Pa. Aug. 19, 2025) (citing Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998)).  However, "[a]t the pleadings stage, '[t]he complaint is not required to identify any comparators who have received more favorable treatment than the plaintiff.'"  Robinson v. Am. Reading Co., Civ. A. No. 24-5608, 2025 WL 1243058, at *4 (E.D. Pa. Apr. 29, 2025) (second alteration in original) (quoting Houle v. Walmart Inc., 447 F. Supp. 3d 261, 280 (E.D. Pa. 2020)) (citing Grigsby v. Pratt & Whitney Amercon, Inc., Civ. A. No. 07-0785, 2008 WL 471549, at *8 (M.D. Pa. Feb. 19, 2008)).  "An inference of discrimination 'could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar . . . discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting . . . animus.'"  Hornby v. Endless Mountain Behav. Health Ctr., Inc., Civ. A. No. 25-0465, 2025 WL 2713741, at *4 (M.D. Pa. Sept. 23, 2025) (alterations in original) (emphasis omitted) (quoting Golod v. Bank of America Corp., 403 F. App'x 699, 702 (3d Cir. 2010)) (citation omitted).  Evidence that the employee was replaced by someone outside of her protected class may also support an inference of discrimination.  Edwards v. Albert Einstein Med. Ctr., 533 F. Supp. 3d 215, 222 (E.D. Pa. 2021) (citing Johnson v.

17

Keebler-Sunshine Biscuits, Inc., 214 F. App'x 239, 242 (3d Cir. 2007)); see also Lazard v. All Restore, LLC, Civ. A. No. 19-6040, 2021 WL 1175137, at *7 (E.D. Pa. Mar. 29, 2021) ("In the Third Circuit, the fact that a plaintiff was replaced by an individual who is not a member of their protected class is sufficient to establish an inference of discrimination." (citing Johnson, 214 F. App'x at 242)). "Derogatory or negative remarks can also satisfy the fourth prong of a prima facie case . . . ." May v. PNC Bank, 434 F. Supp. 3d 284, 296 (E.D. Pa. 2020) (citing Rossi v. Wyoming Valley Health Care Sys., Civ. A. No. 09-0179, 2010 WL 2766343, at *4 (M.D. Pa. July 13, 2010)).

As we described above, the First Amended Complaint alleges the following: (1) Plaintiffs Sheehan, Heydorn, and Iannacone were suspended on March 20, 2023, and fired on March 27, 2023, for violating certain company policies that they did not violate (Am. Compl. ¶¶ 77-79); (2) a male employee who did violate those policies was not disciplined or terminated (id. ¶ 81); (3) all of the Plaintiffs were replaced by male employees (id. ¶ 85); (4) Sobon constantly yelled at and belittled all of the Plaintiffs but did not yell at or belittle male employees (id. ¶¶ 36-37); (5) Lebisky frequently referred to the building in which Plaintiffs work as "nothing but a fucking sorority" (id. ¶ 38); (6) both Sobon and Lebisky made sexually harassing comments to, or took sexually harassing actions direct to, or in the presence of, Plaintiffs and other women who worked for Everstory (id. ¶¶ 34-35, 39-42, 44-51). Considering all of these allegations together, "and viewing them in the light most favorable to the plaintiff[s]," we conclude that the Amended Complaint sufficiently alleges that Plaintiffs Sheehan, Heydorn, and Iannacone were suspended and terminated under circumstances that could give rise to an inference of intentional discrimination on the basis of their sex. Talley, 116 F.4th at 206. We therefore deny the Motion to Dismiss with respect to this argument.

3.    <u>Hernandez</u>

Defendants argue that the Amended Complaint fails to allege that Hernandez suffered an adverse employment action under circumstances that could give rise to an inference of intentional discrimination on the basis of her sex because it specifically alleges that Everstory claimed that Hernandez was fired because of the language that she used in making a complaint to her supervisor about sex discrimination.  (<u>See</u> Am. Compl. ¶¶ 83-84.)  Defendants contend that this allegation asserts that Hernandez was fired because of the language she used, not because of her sex. However, viewing this allegation in the light most favorable to Hernandez, <u>Talley</u>, 116 F.4th at 206, we find that this allegation merely states that Everstory <u>claimed</u> that Hernandez was fired because of the language she used, not that her language was the actual reason for Hernandez's firing.

Defendants also argue that we should dismiss Hernandez's disparate treatment sex discrimination claims because the First Amended Complaint fails to allege sufficient facts to plausibly allege that she was fired under circumstances that could give rise to an inference that she was fired because of her sex.  As we described above, the Amended Complaint alleges that Hernandez was replaced by a male employee (Am. Compl. ¶ 85); that Sobon constantly yelled at and belittled all of the Plaintiffs but did not yell at or belittle male employees (<u>id.</u> ¶¶ 36-37); that Lebisky frequently referred to the building in which Plaintiffs work as "nothing but a fucking sorority" (<u>id.</u> ¶ 38); that Lebisky frequently made sexually harassing comments to Hernandez, such as "your tits look great" (<u>id.</u> ¶ 39); and that both Sobon and Lebisky made sexually harassing comments or took sexually harassing actions directed to, or in the presence of, Hernandez and other women who worked for Everstory (<u>id.</u> ¶¶ 34-35, 41-42, 44-51).  Considering all of these allegations together, "and viewing them in the light most favorable to the plaintiff," we conclude

that the Amended Complaint sufficiently alleges that Hernandez was terminated under circumstances that could give rise to an inference of intentional discrimination on the basis of her sex. <u>Talley</u>, 116 F.4th at 206. We therefore deny the Motion to Dismiss with respect to this argument and, as we have denied the Motion with respect to the arguments made that Counts III and IV should be dismissed with respect to each Plaintiff, we deny the Motion to Dismiss as to Counts III and IV of the Amended Complaint.

      C.    <u>Retaliation</u>

Count I of the Amended Complaint asserts a claim for retaliation in violation of Title VII against Everstory and Count II asserts a claim of retaliation in violation of the PHRA against Everstory and Sobon. "The standard for retaliation is consistent between the two statutes, Title VII and PHRA." <u>Ogilvie v. Summa Glob. Educ.</u>, Civ. A. No. 23-4884, 2025 WL 77076, at *2 (E.D. Pa. Jan. 10, 2025)). Title VII's antiretaliation provision provides that "an employer may not 'discriminate against' an employee 'because,' among other things, the employee 'has opposed any . . . unlawful employment practice.'" <u>Peifer</u>, 106 F.4th at 279 (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). "To make out a prima facie case of retaliation, therefore, a plaintiff must show that (1) 'she engaged in a protected activity,' (2) 'she suffered an adverse employment action,' and (3) 'there was a causal connection between the participation in the protected activity and the adverse action.'" <u>Id.</u> (quoting <u>Carvalho-Grevious</u>, 851 F.3d at 257). "Title VII defines a protected activity as an instance where an employee has opposed any practice made unlawful or has made a charge, testified, assisted, or participated in an investigation under Title VII." <u>Wadhwa v. Sec'y, Dep't of Veterans Affs.</u>, 505 F. App'x 209, 214 (3d Cir. 2012) (citing 42 U.S.C. § 2000e–3(a)). "Protected activity includes oral and written complaints and protests, whether formal or informal, to discriminatory practices prohibited by the statute." <u>Parker v. Phila. Newspapers, Inc.</u>,

322 F. Supp. 2d 624, 630 (E.D. Pa. 2004) (citing <u>Abramson v. William Paterson Coll. of New Jersey</u>, 260 F.3d 265, 287-88 (3d Cir. 2001)).  "'Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII.'"  <u>Wadhwa</u>, 505 F. App'x at 215 (quoting <u>Moore v. City of Phila.</u>, 461 F.3d 331, 341 (3d Cir. 2006)).

      1.    <u>Protected Activity</u>

Defendants argue that we should dismiss Counts I and II because the Amended Complaint fails to allege facts that would establish that any of the Plaintiffs engaged in protected activity.  The Amended Complaint alleges the following: (1) "Polascak made a complaint of sex discrimination to [Everestory's] Human Resources Department" on February 13, 2023; (2)  Sheehan, Heydorn, Iannacone and Hernandez participated in the investigation of that complaint; (3) Sheehan, Heydorn, and Iannacone all complained to their General Manager, Donald Underwood, during a February 2023 meeting that "Sobon was discriminating against them because of their sex"; (4) Polascak made a complaint of discrimination to Underwood during the same meeting; (5) and Hernandez made a complaint of sex discrimination to Lebisky on May 7, 2023.  (Am. Compl. ¶¶ 63-66, 68, 83.)

Defendants argue that these allegations are insufficient to plausibly allege that Plaintiffs engaged in protected activity because the Amended Complaint does not allege the specific actions about which Plaintiffs complained.   As we discussed above, the Amended Complaint plausibly alleges that all of the Plaintiffs were subjected to a hostile work environment based on sex by Lebisky and Sobon.  The Amended Complaint also alleges that "all Plaintiffs were treated poorly compared to male employees, and were constantly belittled and yelled at by Defendant Sobon," who did not belittle or yell at male employees.  (Am. Compl. ¶¶ 36-37.)  The Amended Complaint

further alleges that all of the Plaintiffscomplained about sexual discrimination to Everstory's HR department and/or to their manager(s) that they were being discriminated against on the basis of their sex.  (See id. ¶¶ 63, 65-66, 68, 83.)  Moreover, the Amended Complaint specifically alleges that Sheehan, Heydorn and Iannacone complained that Sobon discriminated against them on the basis of their sex.  (Id. ¶ 66.)  Reading all of the allegations of the Amended Complaint in the light most favorable to Plaintiffs, we find that it plausibly alleges that the Plaintiffs engaged in protected activity. See Malantonio v. Valley Cafe, Civ. A. No. 23-5125, 2024 WL 3433306, at *2 (E.D. Pa. July 16, 2024) (finding that complaint sufficiently alleged protected conduct where it alleged that the plaintiff informally protested his manager's alleged racial and sex-based discrimination by complaining to the owner that the manager had made racial comments and engaged in sexual harassment and had described those comments and actions).  Therefore, we deny the Motion to Dismiss with respect to this argument.

### 2.    Adverse Employment Action

Defendants argue that we should dismiss Polascak's retaliation claim because the Amended Complaint fails to allege that she suffered an adverse action.  Unlike the requirement for a disparate treatment claim, the "'materially adverse' standard articulated in Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53 (2006) still applies" to the adverse employment action element of a retaliation claim.  Robinson v. Euro Motors, Civ. A. No. 23-3561, 2024 WL 4394737, at *4  (E.D. Pa. Oct. 3, 2024) (citing Muldrow, 601 U.S. at 357).  Thus, to support a retaliation claim, the alleged "adverse action must be 'materially adverse[,]' such that it is 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Smith v. City of Atl. City, 138 F.4th 759, 775 (3d Cir. 2025) (alterations in original) (quoting Burlington N., 548 U.S. at 57)); see also id. at 776 (determining that employer's

sending the plaintiff "to perform fire suppression in [a] tropical storm emergency without training and then suspend[ing] him when he did not follow orders," satisfied the second prong of a prima facie case of retaliation). Courts have found that assigning employees to undesirable work tasks, among other things, can "amount[] to materially adverse consequences that would dissuade a reasonable worker from engaging in protected activities." Baughman v. Marathon Petroleum Logistics Servs., LLC, Civ. A. No. 24-0287, 2025 WL 492003, at *7 (M.D. Pa. Feb. 13, 2025) (citations omitted). Courts have also determined that general antagonism, together with a failure to investigate sexual harassment complaints, interference with the plaintiff's job performance, and unwarranted discipline "would be sufficient to deter a reasonable worker from making a charge of discrimination." Smith v. RB Distrib., Inc., 498 F. Supp. 3d 645, 664 (E.D. Pa. 2020). In addition, "repeated harassment can constitute a retaliatory adverse action." Hamilton v. Norristown State Hosp., Civ. A. No. 23-4068, 2024 WL 3623521, at *5 (E.D. Pa. Aug. 1, 2024) (citing Robinson v. SEPTA, Civ. A. No. 22-4572, 2024 WL 1936242, at *6 (E.D. Pa. May 1, 2024)) (add'l citations omitted); see also Robinson v. SEPTA, 2024 WL 1936242, at *6 ("In a retaliatory harassment claim, harassment that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination' is sufficient to establish an adverse employment action." (quoting O'Shea v. Interboro Sch. Dist., Civ. A. No. 13-6305, 2014 WL 5038391, at *2 (E.D. Pa. Oct. 9, 2014)).

In this case, the Amended Complaint alleges that Polascak made a complaint about sex discrimination to Everstory's Human Resources Department on February 13, 2023, and subsequently complained to General Manager Underwood about sex discrimination. (Am. Compl. ¶¶ 63, 68.) Thereafter, in violation of company policy, Underwood allegedly shared Polascak's complaints with Sobon who, in turn, continually called and left voicemail messages for Polascak

the following weekend "in an effort to intimidate her into withdrawing her complaint of discrimination." (Id. ¶ 71.) The Amended Complaint also alleges that, after Polascak complained about discrimination, Everstory "continually and with escalating severity threaten[ed] to terminate Plaintiff Polascak if she refused to violate the law."[1] (Id. ¶ 72.)

Viewing these allegations in the light most favorable to Polascak, we conclude that they plausibly allege that Polascak suffered a materially adverse employment action after she complained about sexual discrimination to Everstory. See Robinson v. SEPTA, 2024 WL 1936242, at *6. Accordingly, we deny the Motion to Dismiss as to this argument.

### 3.    Causation

Defendants also argue that the Amended Complaint fails to plausibly allege the third element of a prima facie case of retaliation because the Amended Complaint does not allege that any of the Plaintiffs' protected activity was a "but-for" cause of any adverse action. However, a plaintiff is not required "to establish but-for causation as part of her prima facie case." Carvalho-Grevious, 851 F.3d at 260. The Third Circuit has, in fact, held that "at the prima facie stage, a plaintiff need only proffer evidence sufficient to raise the inference that . . . her protected activity was the *likely* reason for the adverse employment action." Id. at 253. Thus, "'a plaintiff may rely on "a broad array of evidence" to demonstrate the causal link between [the] protected activity and the adverse [employment] action taken.'" Id. at 260 (second alteration in original) (quoting Marra

---

[1] The Amended Complaint also alleges that, as a result of Everstory's threats to fire her for refusing to violate the law, and knowing that she could lose her licensure if she were terminated by Everstory, Polascak was constructively terminated from her job when she resigned on February 24, 2023. (Am. Compl. ¶ 74.) We note that "[a] constructive discharge constitutes an 'adverse employment action' for purposes of Title VII—if proven, it is the legal equivalent of being terminated." Ellingsworth v. Hartford Fire Ins. Co., 247 F. Supp. 3d 546, 556 (E.D. Pa. 2017) (citation omitted). Nonetheless, we need not determine, at this juncture, whether the Amended Complaint plausibly alleges that Polascak was constructive terminated.

v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007)).  The Third Circuit has instructed "that when 'the temporal proximity between the protected activity and the adverse action is "unusually suggestive,"' that alone suffices to establish a causal connection."  Kern v. DAS Cos., No. 24-2420, 2025 WL 2170324, at *9 (3d Cir. July 31, 2025) (quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)).  "When this is not the case, courts must determine 'whether the proffered evidence, looked at as a whole, may suffice to raise the inference.'"  Id. (quoting LeBoon, 503 F.3d at 232).  Thus, a plaintiff can also meet this burden through allegations regarding "an employer's inconsistent explanation for taking an adverse employment action" or through "a pattern of antagonism."  Carvalho-Grevious, 851 F.3d at 260 (first quoting Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986;) and then quoting Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997)).  Moreover, "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997) (citing Waddell, 799 F.2d at 73).

a.    Polascak

Defendants argue, generally, that the Amended Complaint fails to allege facts from which a causal connection could be inferred between the protected activity of any Plaintiff and any adverse employment action suffered by that Plaintiff.  While Defendants do not specifically argue that the Amended Complaint fails to allege causation with respect to Polascak, we have examined the allegations of the Amended Complaint and found that they are sufficient to plausibly allege the third factor of a prima facie case of retaliation with respect to Polascak.  The Amended Complaint alleges that: (1) Polascak made her first complaint about sex discrimination on February 13, 2023; (2) General Manager Underwood subsequently told Sobon about her complaint; (3) Sobon made

25

multiple calls to Polascak the following weekend in an attempt to intimidate her into withdrawing her complaint; (4) following Polascak's complaint of sex discrimination, Everstory continually threatened to terminate Polascak if she did not violate the law; and (5) Polascak resigned her employment with Everstory on February 24, 2023.  (See Am. Compl. ¶¶ 63, 68-69, 71-72, 74.) Thus, the Amended Complaint alleges that Polascak was subjected to a materially adverse employment action, i.e., harassing telephone calls from her superior, either five or six days after she first complained about sex discrimination to Everstory's Human Relations Department.[2] Everstory's other adverse employment actions directed at Polascak occurred no more than eleven days after Polascak complained to Everstory's Human Relations Department that she had been subjected to sex discrimination.  (See id.)  While the Third Circuit has noted that "'there is no bright line rule as to what constitutes unduly suggestive temporal proximity,'" it has determined that a temporal proximity of seven days between the protected activity and the adverse employment action "is in the realm of what this Court and others have found sufficient at the prima facie stage."   Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (quoting LeBoon, 503 F.3d at 233) (citations omitted). Viewing the allegations of the Amended Complaint in the light most favorable to Polascak, we find that they sufficiently allege that Everstory subjected Polascak to adverse employment actions beginning five days after she engaged in protected activity.  We conclude, accordingly, that the Amended Complaint plausibly

---

[2] February 13, 2023, the day Polascak allegedly first complained about sex discrimination, was a Monday.  (See Am. Compl. ¶ 63.)  Plaintiff resigned from Everstory on February 24, 2023, the Friday of the following week.  (See id. ¶ 74.)  Therefore, Saturday, February 18, 2023 and Sunday, February 19, 2023 comprise the only weekend between the day Plaintiff complained about sex discrimination to Everstory's Human Relations Department and the day she resigned. February 18, 2023 was five days after Polascak's complaint of sex discrimination and February 19, 2023 was six days after Polascak's complaint of sex discrimination.

alleges a causal connection between Polascak's protected activity and an adverse employment action.

b.    Hernandez

Defendants argue that the Amended Complaint fails to allege facts from which a causal connection could be inferred between Hernandez's complaint of sex discrimination and her termination.    Specifically, Defendants argue that the Amended Complaint fails to plausibly allege causation because it alleges that Hernandez was terminated due to the language she used in making her complaint of sex discrimination, rather than for making a claim of sex discrimination.    The Amended Complaint alleges that Hernandez made a complaint of sex discrimination to Lebisky on May 7, 2023.  (Am. Compl. ¶¶ 82-83.)  The Amended Complaint further alleges that Everstory terminated Hernandez on May 15, 2023, and that the company "stat[ed] in part that the termination was due to the language used by Plaintiff Hernandez in making her complaint." (Id. ¶ 84.)  Reading the Amended Complaint in the light most favorable to Hernandez, we find that it alleges that Hernandez was fired by Everstory eight days after she engaged in protected activity and that her firing was related to her complaint of sex discrimination.  Under these circumstances, we conclude that the Amended Complaint plausibly alleges sufficient facts to raise an inference that there was a causal connection between Hernandez's complaint of sex discrimination and her termination by Everstory.  See Kern, 2025 WL 2170324, at *9.

c.    Sheehan, Heydorn, and Iannacone

Defendants argue that the Amended Complaint does not plausibly allege causation with respect to Sheehan, Heydorn, and Iannacone because it alleges that they did not experience an adverse employment action until they were suspended from their employment with Everstory one month after they made their complaints of discrimination to General Manager Underwood.

Defendants rely on <u>Kortyna v. Lafayette College</u>, 726 F. App'x 934 (3d Cir. 2018), in which the Third Circuit found that a complaint "failed to allege a causal link between [a plaintiff's] complaints of sex or disability discrimination and his firing" because "the timing of his firing, more than three weeks after his last complaint, [did] not by itself support an inference of retaliation" and the complaint did not allege any facts that would show "a pattern of antagonism between the complaints and the firing." <u>Id.</u> at 938 (quotation omitted) (citing <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003).

The Amended Complaint alleges that, in February 2023, "Plaintiffs Sheehan, Heydorn and Iannacone complained to their General Manager, Donald Underwood . . . , that Sobon was discriminating against them because of their sex." (Am. Compl. ¶¶ 65, 66.) The Amended Complaint further alleges that Polascak attended the meeting in which these complaints were made. (<u>Id.</u> ¶ 68.) Since the Complaint also alleges that Sobon called Polascak the weekend after this meeting, and those phone calls were made on February 18 or 19, 2023, this meeting must have occurred before February 18, 2023. (<u>Id.</u> ¶ 71; <u>supra</u> n. 2.) The Complaint further alleges that Plaintiffs Sheehan, Heydorn, and Iannacone were suspended by Everstory "[o]n or around March 20, 2023, around a month after their complaints of sex discrimination." (<u>Id.</u> ¶ 77.) We find that this timing "does not by itself support an inference of retaliation." <u>Kortyna</u>, 726 F. App'x at 938 (citing Thomas, 351 F.3d at 114). However, viewing the allegations of the Amended Complaint in the light most favorable to Sheehan, Heydorn, and Iannacone, we find that the allegations that Everstory (1) falsely accused these Plaintiffs of having violated Everstory's policies and practices "by accepting and/or authorizing payment for pallbearing services[;]" (2) suspended Sheehan, Heydorn, and Iannacone based on these false accusations one month after they made their complaints of sex discrimination; (3) fired them one week after suspending them; and (4) included

Sobon and Lebisky in the decision to terminate these Plaintiffs' employment, show a post-protected activity pattern of antagonism on the part of Everstory against Sheehan, Heydorn, and Iannacone. (See Am. Compl. ¶¶ 77-80.) These allegations, in combination with the allegations regarding the timing of these Plaintiffs' suspensions support the conclusion that the Amended Complaint plausibly alleges a causal connection between Sheehan's, Heydorn's and Iannacone's complaints of sex discrimination and their terminations. See Marra, 497 F.3d at 303 (emphasizing "that it matters not . . . whether each piece of evidence of antagonistic conduct is alone sufficient to support an inference of causation, so long as the evidence permits such an inference when considered collectively" (citation omitted)). We therefore reject Defendants' arguments that the Amended Complaint fails to plausibly allege that Plaintiffs' complaints of sex discrimination were causally connected to the adverse actions that Everstory took against them. Having rejected this and all of Defendants' other arguments for dismissal of Counts I and II, we deny the Motion to Dismiss insofar as it seeks dismissal of these Counts.

D.    Wrongful Discharge

Count VII of the Amended Complaint asserts a claim on behalf of Sheehan, Heydorn, Polascak, and Iannacone for wrongful discharge in violation of the public policy of Pennsylvania against Everstory. "Pennsylvania law recognizes the doctrine of at-will employment so that, as a general rule, no cause of action exists based upon an employer's termination of an at-will employment relationship." Spierling v. First Am. Home Health Servs., Inc., 737 A.2d 1250, 1252 (Pa. Super. Ct. 1999) (quoting Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998)). "Generally, an employer 'may discharge an employee with or without cause, at pleasure, unless restrained by some contract.'" Id. (quoting Shick, 716 A.2d at 1233). However, "[t]he employer's privilege to dismiss an employee with or without cause is not absolute . . . and may be qualified by the dictates

of public policy." Id. at 1252-53 (quoting Shick, 716 A.2d at 1233). Thus, "[a]n employee may bring a cause of action for a termination of [the employment] relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy." Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009). "These circumstances include instances in which the discharge of an at-will employee would violate a constitutional, contractual, or statutory provision . . . ." Salsberg v. Mann, 310 A.3d 104, 126 (Pa. 2024) (citations omitted).

In order to state a claim for wrongful discharge, a complaint must allege that the plaintiff (1) "was terminated, either directly or through constructive discharge; and (2) that discharge violated a 'clearly defined mandate of public policy.'" Williamson v. Friend MTS (US) Inc., Civ. A. No. 19-5866, 2021 WL 11550119, at *6 (E.D. Pa. July 26, 2021) (quoting McKinley v. Lycoming, Civ. A. No. 10-921, 2012 WL 1514880, at *11 (M.D. Pa. Apr. 30, 2012)). There are "'three limited circumstances in which public policy will trump employment at-will.'" Spyridakis v. Riesling Grp., Inc., 398 F. App'x 793, 799 (3d Cir. 2010) (quoting Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003)). Specifically, "'[a]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute.'" Id. (second alteration in original) (quoting Fraser, 352 F.3d at 111); see also Ogilvie v. Summa Glob. Educ., Civ. A. No. 23-4884, 2025 WL 77076, at *4 (E.D. Pa. Jan. 10, 2025) (same).

Defendants argue that the Amended Complaint fails to state a facially plausible wrongful discharge claim because it does not allege sufficient facts to show that Everstory required Plaintiff to commit illegal acts. The Amended Complaint alleges that Everstory terminated the employment of Sheehan, Heydorn, Polascak and Iannacone because they "reported violations of

statutory and/or professional duties and/or refused to violate statutory and/or professional duties."
(Am. Compl. ¶¶ 116-17.)  The Amended Complaint further alleges that, during 2022 and 2023,
"Sheehan, Heydorn, Polascak and Iannacone made multiple complaints regarding [Everstory's]
violations of the law, specifically rules promulgated by the State Board of Funeral Directors."  (Id.
¶ 52 (emphasis omitted).)  The Amended Complaint also alleges that "Sheehan, Heydorn, Polascak
and Iannacone refused to violate the law themselves, despite being ordered to multiple times by
Defendants."  (Id. ¶ 53.)  The Amended Complaint specifically alleges that "Polascak refused a
request by Defendant Sobon to illegally cremate a body without any paperwork" and, after she
refused this order because performing a cremation under these circumstances would be illegal
"Sobon screamed at her and threatened to terminate her employment."  (Id. ¶¶ 54-55.)  Sobon also
"ordered . . . Polascak to violate the law by hiding the fact that a direct cremation package was
sold by the cemetery to a family" and screamed at Polascak and threatened to fire her when she
refused his order.  (Id. ¶¶ 56-57.)  The Amended Complaint also alleges that Sheehan told Everstory
that "Sobon had tried to pressure Polascak into illegally cremating a body," and Iannacone told
Everstory that Sobon "pressured her and other Plaintiffs to perform illegal disinterments without
the proper paperwork."  (Id. ¶¶ 58-59.)  In addition, Everstory "pressured . . . Heydorn to illegally
identify a body that had been placed in the wrong crypt without authorization."  (Id. ¶ 61.)
Plaintiffs refused these illegal orders.  (Id. ¶¶ 60, 62.)  Defendants contend that these allegations
fail to plausibly allege that terminating Sheehan, Heydorn, Polascak, and Iannacone under these
circumstances violated a clear mandate of public policy because it is not clear that "rules
promulgated by the State Board of Funeral Directors" constitute clear mandates of public policy.
(Id. ¶ 52.)

The Pennsylvania State Board of Funeral Directors is an administrative entity charged with enforcement of the Pennsylvania Funeral Director Law.  See 63 Pa. Stat. §§ 479.1, 479.16.  The State Board of Funeral Directors is a part of the Commonwealth of Pennsylvania Department of State.  49 Pa. Code. § 13.1.  The Funeral Directors Law empowers the State Board of Funeral Directors "to formulate necessary rules and regulations not inconsistent with [the Funeral Director Law] for the proper conduct of the business or profession of funeral directing and as may be deemed necessary or proper to safeguard the interests of the public and the standards of the profession."  63 Pa. Stat. § 479.16.  The regulations promulgated by the State Board of Funeral Directors identify "[f]urnishing embalming, other services or merchandise without having obtained written permission from a family member or other person authorized by law to make funeral arrangements for the deceased" as unprofessional conduct.  49 Pa. Code. § 13.202(11).  In addition, Pennsylvania law prohibits individuals who are not licensed funeral directors from selling direct cremation services.  See Pre-Need Family Servs. E. Region v. Bureau of Prof. & Occupational Affairs, 904 A.2d 996, 1000-02 (Pa. Commw. Ct. 2006) (determining that the sale of "goods and services related to direct cremation to the public" by individuals who are not licensed funeral directors constitutes the "unlicensed practice of funeral directing in violation of the Law"); see also 63 Pa. Stat. § 479.13(a), (c).  We conclude that the Amended Complaint's allegations that Everstory instructed Plaintiffs to violate Pennsylvania laws and regulations by: (1) cremating a body without any paperwork; (2) hiding the fact that a direct cremation package had been sold to a family; (3) performing disinterments without the proper paperwork; and (4) "identify[ing] a body that had been placed in the wrong crypt without authorization" plausibly alleges that Everstory instructed Plaintiffs to violate the laws and regulations of the Commonwealth of Pennsylvania. (Am. Compl. ¶ 54, 56, 59, 61.)  We further conclude that the Amended Complaint therefore alleges

that Everstory required Plaintiffs to violate the public policy of Pennsylvania.  See Spyridakis, 393 F. App'x at 799 (quoting Fraser, 352 F.3d at 111).  We therefore deny the Motion to Dismiss with respect to this argument.

Defendants also argue that we should dismiss Count VII with respect to Polascak because the Amended Complaint does not allege that Everstory terminated her, but only that she was constructively discharged because she was concerned that she could lose her license if she were terminated.  (Am. Compl. ¶¶ 73-74.)  As we noted above, a complaint can state a claim of wrongful discharge by alleging that the plaintiff was terminated through constructive discharge.  Williamson, 2021 WL 11550119, at *6 (quoting McKinley, 2012 WL 1514880, at *1l).  "An employee is constructively discharged if his 'employer makes working conditions so intolerable that the employee is forced to resign.'"  Id. (quoting Kroen v. Bedway Sec. Agency, Inc., 633 A.2d 628, 633 (Pa. Super. Ct. 1993)).  The Amended Complaint alleges that, after Polascak made her complaint of discrimination, Everstory "continually and with escalating severity threaten[ed] to terminated . . . Polascak if she refused to violate the law."  (Am. Compl. ¶ 72.)  Being "'threatened with discharge'" is one of the factors that has been recognized by the Third Circuit as supporting a claim of constructive discharge.  Lewis v. Univ. of Pa., 779 F. App'x 920, 922 (3d Cir. 2019).  Viewing the allegations of the Amended Complaint in the light most favorable to Polascak, we conclude that it plausibly alleges that she was constructively discharged by Everstory through its continual and escalating threats to terminate her for refusing to violate the law regarding furnishing services, such as cremation, without first obtaining written permission from a family member and for refusing to "hid[e] the fact that a direct cremation package was sold by the cemetery to a family" in violation of  49 Pa. Code. § 13.202(11) and 63 Pa. Stat. § 479.13(a), (c).  (See Am.

Compl. ¶¶ 54-57, 72-74.)  We therefore deny the Motion to Dismiss with respect to this argument and we deny the Motion with respect to Count VII.

**IV.    CONCLUSION**

For the reasons stated above, we deny the Motion to Dismiss the Amended Complaint in its entirety.  An order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.